# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HAITIAN-AMERICANS UNITED, INC., BRAZILIAN WORKER CENTER, CHELSEA COLLABORATIVE, INC. and CENTRO PRESENTE, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States in his Official Capacity, UNITED STATES DEPARTMENT OF COMMERCE, UNITED STATES BUREAU OF THE CENSUS, STEVEN DILLINGHAM, Director of the U.S. Census Bureau in his Official Capacity, and WILBUR ROSS, Secretary of the Department of Commerce in his Official Capacity, <br><br> Defendants. | Case No. 20-11421-DPW-BMS-PBS |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY

By accompanying Motion, Plaintiffs Haitian-Americans United, Inc., Brazilian Worker Center, Chelsea Collaborative, Inc. and Centro Presente request limited expedited discovery. In this action, Plaintiffs are challenging a Memorandum issued by President Donald J. Trump on July 21, 2020, titled "Excluding Illegal Aliens from the Apportionment Base Following the 2020 Census" (the "Memorandum") on a variety of grounds, including that it purports to exclude undocumented immigrants from the basis for congressional apportionment in violation of the U.S. Constitution and the Census Act. As set forth below, Plaintiffs require expedited discovery so that a decision on the merits of their case can be reached as soon as possible and before the

conclusion of the census at the end of October 2020, to avoid an undercount of the communities Plaintiffs serve which cannot later be remedied, and to counter the Defendants' argument—made in every motion to dismiss filed in every case challenging the July 21 Memorandum and which Plaintiffs anticipate will be raised here—that Plaintiffs lack standing to raise their apportionment injury and that their asserted claims are not ripe for judicial determination. The Court should therefore grant this Motion and permit Plaintiffs to conduct limited, expedited discovery.

## BACKGROUND

Plaintiffs have brought this action to enjoin and restrain Defendants from carrying out their unlawful plan, described in the Complaint, to exclude undocumented immigrants from the congressional apportionment base for the first time in our nation's history. The actions contemplated and ordered in the Complaint are in violation of the Constitution, which states that "[r]epresentatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state," and excluding only "Indians not taxed." U.S. Const., amend. XIV, § 2. Those actions also violate two federal statutes: 13 U.S.C. § 141, which requires the Department of Commerce to "tabulat[e] the total population by States . . . as required for the apportionment of Representatives in Congress," and 2 U.S.C. § 2a(a), which requires the President to transmit to Congress apportionment tables "showing the whole number of persons in each State." Previous Departments of Justice under the administrations of both parties, and at least one federal court, have held that the exclusion of undocumented immigrants from the apportionment base would be unconstitutional. *See Federation for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 576-77 (D.D.C.) (three-judge court), *appeal dismissed*, 447 U.S. 916 (1980).

As Plaintiffs explain in the Complaint, because the federal government has no mechanism for conducting an actual, direct count of the undocumented population within the States—and in fact has been prevented by the Supreme Court from inquiring about citizenship in the 2020 census[1]—implementation of the Memorandum would violate Article I, § 2 of the Constitution, which requires all figures used in congressional apportionment to be determined via "actual Enumeration." *See Utah v. Evans*, 536 U.S. 452, 477 (2002) (recognizing that "the Framers expected census enumerators to seek to reach each individual household," and not to use substitute "statistical methods"). Insofar as Defendants seek to effectuate the Memorandum's instructions by using statistical sampling, as the Government suggested to the U.S. District Court for the District of Maryland in a parallel proceeding,[2] their implementation of those instructions would violate the Census Act, which "directly prohibits the use of sampling in the determination of population for purposes of [congressional] apportionment." *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 338 (1999); *see* 13 U.S.C. § 195.

Expedited discovery is needed so that a decision can be reached as soon as possible and before the conclusion of the census at the end of October, to avoid an undercount of the communities Plaintiffs serve which cannot later be remedied. *See National Urban League v. Ross*, Case No. 20-CV-05799-LHK, 2020 WL 5739144 (N.D. Cal. Sept. 24, 2020) (copy provided at Attachment 1), *notice of appeal filed* (9th Cir. Sept. 25, 2020). This urgency is underscored by the fact the government has already filed a Notice of Appeal to the Ninth Circuit and sought a stay of the district court's decision—depending on the outcome of that litigation, the timeline for census-taking may be even further truncated. *See id.*

---

[1] *See Department of Commerce v. New York*, 139 S. Ct. 2551 (2019).

[2] *See* Hansi Lo Wang, *Trump Sued Over Attempt To Omit Unauthorized Immigrants From a Key Census Count*, NPR (July 24, 2020 10:11 AM), https://www.npr.org/2020/07/24/894322040/trump-sued-for-attempt-to-omit-unauthorized-immigrants-from-a-key-census-count (cited in the Complaint (ECF No. 1) at ¶ 91).

In addition, Defendants have sought dismissal of other lawsuits challenging the President's Memorandum on grounds similar to those set forth in Plaintiffs' Complaint on the basis that they purportedly are not ripe and thus not justiciable, and that Plaintiffs lack standing to allege apportionment injury *See* Affidavit of Lauren Alexa Sampson ("Sampson Aff."), Exhs. 1-4. The discovery that Plaintiffs are seeking leave to serve on Defendants at this time, and to require expedited responses to, are narrowly tailored to gather evidence on these specific and targeted issues.[3] Specifically, while Defendants will argue (as they have in other cases) that the dispute is not ripe because the Commerce Department has not yet determined how it will implement the Memorandum, Plaintiffs' proposed discovery will seek evidence showing that the Commerce Department has decided or will soon decide upon a methodology to implement the July 21 Memorandum and that said methodologies cannot be implemented without violating the Census Act, such that Plaintiffs' claims are presently ripe. *See Department of Commerce*, 525 U.S. at 338.

Plaintiffs request, therefore, that Plaintiffs be permitted to serve their discovery now, prior to the Rule 26(f) conference, that the Defendants be required to respond to Plaintiffs' document requests by October 14, 2020, and that the deposition of Defendants' Rule 30(b)(6) representative be held on October 16, 2020. *See* Motion at Exhs. 1 & 2. The discovery that Plaintiffs are seeking is narrowly tailored and not unreasonably burdensome. In light of the exigency of the claims asserted in this action—exigency created by Defendants' own decision to issue the July 21 Memorandum months after the census had begun—and the absence of any

---

[3] A copy of the request for production of documents that Plaintiffs seek leave to serve on Defendants is attached to their Motion for Expedited Discovery (the "Motion") at Exhibit 1. A copy of Plaintiffs' proposed Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) is attached to the Motion at Exhibit 2.

undue burden on Defendants, Plaintiffs' motion for targeted, expedited discovery should be granted.

## ARGUMENT

### I. CONGRESS HAS PROVIDED FOR CHALLENGES TO APPORTIONMENT TO BE HEARD ON AN EXPEDITED BASIS.

Because apportionment decisions impact a cascade of time-delimited political processes, Congress has provided for challenges to apportionment to be resolved expeditiously. Under 28 U.S.C. §2284(a) ("Section 2284"), challenges to apportionment are heard by a three-judge court whose decision may be appealed directly to the Supreme Court. As the legislative history indicates, the purpose of this procedure is to ensure that "every reasonable means should be provided for speeding the litigation." 36 Cong. Rec. 1679 (1903) (statement of Sen. Fairbanks); *see also Swift and Co. v. Wickham*, 382 U.S. 111, 124 (1965) (observing that "[t]he purpose of the three-judge scheme was in major part to expedite important litigation"); *Graham v. Minter,* 437 F.2d 427, 429 (1st Cir. 1971) (noting that the three-judge court procedure was "designed to be expeditious").

This Court has already determined that, pursuant to 28 U.S.C. §2284(a), this matter shall be heard by a three-judge court. *See* ECF No. 10. It should allow expedited discovery on that same basis.

### II. GOOD CAUSE EXISTS FOR EXPEDITED DISCOVERY

"To obtain expedited discovery, a party must show good cause." *Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018), *citing* Fed. R. Civ. P. 26(d)(1); Fed. R. Civ. P. 30(a)(2)(A)(iii); *see also Momenta Pharms., Inc. v. Teva Pharms. Industries Ltd.,* 765 F. Supp.2d 87, 88 (D. Mass. 2011) ("For a party to obtain expedited discovery before the Rule 26(f) Conference, it must show good cause."); *see also* Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A) (responses to

5

interrogatories and document requests are due thirty days after service, unless the Court on motion specifies a shorter or longer time for responses). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Good cause for expedited discovery exists if the request for it "is 'reasonable[ ] . . . in light of all of the surrounding circumstances,' including 'the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity.' *Jimenez*, 326 F.R.D. at 361, *citing Momenta,* 765 F.Supp.2d at 89; *see also McMann v. Doe,* 460 F.Supp.2d 259, 265 (D. Mass. 2006).[4]

All of these factors favor an order granting Plaintiffs' request for expedited discovery in this case. First, the purpose of the discovery—to gather critical evidence necessary to counter Defendants' ripeness argument and to support the merits of Plaintiffs' claims—is entirely proper and appropriate. Second, it is highly likely that if discovery is not expedited, Plaintiffs will suffer irreparable harm. *Compare Jimenez,* 326 F.R.D. 357 (ordering expedited discovery concerning challenged practices of unlawfully detaining and deporting of aliens which caused irreparable harm).  Unless Plaintiffs are able to take expedited discovery, Defendants will continue to use their untested assertions regarding feasibility as a shield against Plaintiffs' claims, while simultaneously refusing to provide any information relevant to those assertions.

Third, Plaintiffs are very likely to succeed on the merits of their claims. The Constitution clearly and unequivocally requires that the apportionment of representatives be based on a count

---

[4] The First Circuit has not addressed the proper standard to determine whether "good cause" exists to justify expedited discovery, but a "a majority of district courts—including this district—have applied the 'reasonableness' standard." *Laughlin v. Orthofix Int'l,* N.V., 293 F.R.D. 40, 41 (D. Mass. 2013), *citing St. Louis Group, Inc. v. Metals and Additives Corp., Inc.,* 275 F.R.D. 236, 239 (S.D. Tex. 2011); *McMann v. Doe,* 460 F.Supp.2d 259, 265 (D. Mass. 2006).

of "whole number of persons in each state," and excluding only "Indians not taxed" – and the Memorandum directly and unmistakably violates that explicit command. *See* U.S. Const., amend. XIV, § 2. Indeed, a three-judge court in another district has already determined, in a unanimous, detailed, and well-reasoned opinion, that the Memorandum "violates the statutes governing the census and apportionment" in two ways – that is, by directing the Secretary of Commerce to provide two sets of numbers, one of which will not be derived from the census, and by announcing that it will use the numbers not derived from the census in connection with apportionment. *See State of New York v. Trump*, Case No. 20-CV-5770 (RCW) (PWH) (JMF), 2020 WL 5422959, at *2 (S.D.N.Y. Sept. 10, 2020) (per curiam), *appeal docketed*, Case No. 20-366 (U.S. Sept. 22, 2020).

Fourth, requiring the Defendants to respond to Plaintiffs' discovery requests prior to the Rule 26(f) conference, and on an expedited basis, will not impose an undue burden. The discovery that Plaintiffs are seeking is limited and "narrowly tailored to address the immediate issues and asserted irreparable harm." *See Jimenez*, 326 F.R.D. at 361 (citing Fed. R. Civ. P. 26(b)(1)). In particular, the discovery includes only ten document requests and four Rule 30(b)(6) deposition topics, each of which is restricted in scope to seeking specific and highly relevant evidence concerning the Defendants' implementation of the Memorandum. *See* Motion at Exhs. 1 & 2.

Finally, the service of discovery requests at this point in the litigation is not premature. The Court has already held an initial scheduling conference on September 15, 2020, and the parties have already filed a joint briefing schedule on September 27, 2020. Accordingly, although the Court has not held a conference specifically pursuant to Rule 16, limited and

targeted discovery aimed at specific issues that will soon be before the Court on motions filed by both sides is warranted, timely, and not premature.

Good cause for expedited discovery also exists when "issues arise as to jurisdiction." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). As noted above, Plaintiffs reasonably anticipate that Defendants will raise jurisdictional issues in a motion to dismiss, and they therefore need discovery on these issues to defend themselves against such those arguments. Whether to permit jurisdictional discovery is within the "broad discretion of the district court." *Mullaly v. Sunrise Senior Living Mgmt., Inc.,* 224 F. Supp. 3d 117, 123 (D. Mass. 2016) (further citation omitted) (allowing jurisdictional discovery where Plaintiffs have presented a colorable case for personal jurisdiction but additional clarity is needed). When faced with a challenge by defendants of the alleged jurisdictional facts, the district court "has 'broad authority' in conducting the inquiry and can, in its discretion, order discovery, consider extrinsic evidence or hold evidentiary hearings in determining its own jurisdiction." *Vilaythong v. Sterling Software, Inc.,* 353 F. Supp. 3d 87, 91 (D. Mass. 2018), *citing Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001). The Court should exercise its discretion to allow such discovery here.

### III. DEFENDANTS' RECENT REPRESENTATIONS UNDERSCORE THE NEED FOR DISCOVERY ON THEIR JURISDICTIONAL DEFENSES.

In papers that Defendants have filed in other lawsuits challenging the Memorandum, Defendants have argued that the Memorandum makes it the policy of the United States to exclude undocumented immigrants from the apportionment base only "to the extent feasible," and that because it is purportedly still unknown whether it will be "feasible" for the Census Bureau to provide a second set of numbers that excludes undocumented immigrants, plaintiffs

lack standing and their claims are not ripe.[5] In *New York v. Trump*, for example, Defendants argued as follows:

> The Presidential Memorandum states that "it is the policy of the United States to exclude" illegal aliens from the apportionment base "*to the extent feasible* and to the maximum extent of the President's discretion under the law" [and] . . . . directs the Secretary of Commerce to provide two sets of numbers—one tabulated "according to the methodology set forth" in the Residence Criteria for counting everyone at their usual residence, and a second "permitting the President, *to the extent practicable*," to carry out the stated policy of excluding illegal aliens from the apportionment base.
>
> The extent to which it will be feasible for the Census Bureau to provide the Secretary of Commerce a second tabulation is, at this point, unknown. . . . .
>
> Because it is not known what the Secretary may ultimately transmit to the President, it is necessarily not yet known whether the President will be able to exclude some or all illegal aliens from the apportionment base. As a result, Plaintiffs' apportionment claims are unripe . . . .

*See* Sampson Aff. Exh. 2 at 7-8 (citing and quoting 85 Fed. Reg. at 44,680 (emphasis added in the original)). Similarly, in *San Jose v. Trump*, after noting (as they did In *State of New York*) that the President's Memorandum states that the policy of the United States is to exclude illegal aliens from the apportionment base "to the extent feasible" and directs the Secretary of Commerce to provide a second tabulation that will allow the President to carry out that policy "to the extent practicable," Defendants make the following argument:

---

[5] *See, e.g.*, *Common Cause v. Trump*, No. 1:20-cv-02023-CRC-GGK-DLF, Defendants' Motion to Dismiss and Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 59) at 7 (D.D.C. Sept. 2, 2020) (copy attached to Sampson Aff. at Exh. 1); *New York v. Trump*, No. 20 Civ. 5770 (JMF), Memorandum of Law in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiffs' Motion for Partial Summary Judgment or Preliminary Injunction (ECF No. 118) at 1, 7 (S.D.N.Y. Aug. 19, 2020) (copy attached to Sampson Aff. at Exh. 2); *San Jose v. Trump*, Case No. 5:20-cv-05167-LHK-RRC-EMC, Defendants' Notice of Motion and Motion to Dismiss, or in the Alternative, Motion for Partial Summary Judgment (ECF No. 84) at 6-7 (N.D. Cal. Sept. 10, 2020) (copy attached to Sampson Aff. at Exh. 3); *Useche v. Trump*, Case No. 8:20-cv-2225-PX, Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment or a Preliminary Injunction (ECF No. 36) at 7 (D. Md. Sept. 1, 2020) (copy attached to Sampson Aff. at Exh. 4).

> Notwithstanding Plaintiffs' suggestion that this Court ignore the prerequisite the President included in his directive . . . the extent to which it will be feasible for the Census Bureau to provide the Secretary of Commerce a second tabulation is, at this point, unknown. . . . .
>
> Because it is not known what the Secretary may ultimately transmit to the President, it is necessarily not known whether the President will be able to exclude any, some, or all illegal aliens from the apportionment base. As a result, Plaintiffs' apportionment claims are unripe . . . .

*See* Sampson Aff., Exh. 3 at 6-7; *see also id.* Exh. 1 at 7; Exh. 4 at 7.

Defendants thus are attempting to use the "feasibility" language in the Memorandum as a shield to prevent judicial review. But they have not submitted any facts or supporting evidence suggesting that the Commerce Department has determined, or even that it may determine, that it is not feasible to provide estimates of undocumented immigrants for purposes of adjusting the apportionment population counts. As Judge Wesley noted during the parties' oral argument in *New York v. Trump* on September 3, 2020, this uncertainty "can't be self-induced." *See* Sampson Aff., Exh. 5 at 37:10-11. Yet Defendants continue to argue that they have had not sufficient time to study the issue, even though the decision to issue the Memorandum well after the census had begun was made unilaterally by the President, and that the various plaintiffs' claims are not ripe until the Secretary has decided how to effectuate the Memorandum—even though Defendants cannot say when that decision would be made and refuse to provide any information, to any court, about how exclusion of undocumented immigrants from the apportionment base would practically, and lawfully, occur.

Moreover, recent representations by Defendants suggest that they have in fact decided on a methodology to implement the Memorandum that "reflects the President's policy judgment" to exclude undocumented immigrants from the apportionment base. On September 16, 2020, Defendants filed a motion in the Southern District of New York seeking a stay of the ruling in

*New York v. Trump*, pending their appeal to the Supreme Court. *See New York v. Trump*, Case No. 20-CV-5770 (RCW) (PWH) (JMF), Defendants' Memorandum of Law in Support of their Motion for Stay of Judgment Pending Appeal (ECF No. 172) (S.D.N.Y Sept. 16, 2020) (copy attached to Sampson Aff. at Exh. 6).[6] In support of their motion, Defendants argued that they are entitled to a stay under *Nken v. Holder*, 556 U.S. 418 (2009), which requires showing more than just "some 'possibility of irreparable injury,'" because without a stay "the Secretary and the President will be forced to make reports by those deadlines that do not reflect the President's policy judgment," and thus would be irreparably harmed. *See* Sampson Aff., Exh. 6 at 2, 7; *see also Nken*, 556 U.S. at 434. But that argument is only factually plausible if Defendants have decided, or soon will decide, on a methodology to implement the Memorandum that "reflects the President's policy judgment" to exclude undocumented immigrants from the apportionment counts. Indeed, on September 18, 2020, the White House Press Secretary stated that the federal government's "continuing preparations to execute the President's policy not to include illegal aliens in the apportionment base," as well as the Commerce Department's "efforts to compile citizenship and immigration status data to achieve an accurate count of the number" of undocumented immigrants in the United States "continue[] unabated."[7]

The incongruity between Defendants' recent representations to other courts and in their other public statements makes clear that Plaintiffs should be afforded jurisdictional discovery. In addition to supporting the merits of Plaintiffs' claims, if the methodologies that the Defendants

---

[6] As noted above, in that case (which involves claims similar to those asserted by Plaintiffs), a three-judge court granted the plaintiffs summary judgment, declared the Memorandum unlawful, and enjoined Defendants from implementing it. The court determined that Plaintiffs had standing because of the effect of the Memorandum on ongoing Census 2020 field operations, but based on Defendants' representations regarding the alleged uncertainty over whether and how they would provide the data demanded by the Memorandum and without the benefit of discovery, the court declined to address standing or ripeness as to Plaintiffs' claim that the Memorandum would cause apportionment injuries.

[7] *Available at* https://www.whitehouse.gov/briefings-statements/statement-press-secretary-091820/.

are currently considering cannot be lawfully implemented, Plaintiffs' claims are ripe and Defendants' jurisdictional defenses will fail.

## IV. DELAY IN TAKING DISCOVERY ON JURISDICTIONAL ISSUES WOULD PREJUDICE PLAINTIFFS.

Plaintiffs cannot afford to delay commencing the limited and targeted discovery that they are requesting to serve on Defendants, because time is of the essence. The 2020 Census will end on October 31, 2020, and that timeline may be further reduced depending on the outcome of the government's appeal of the enjoining of the Replan to the Ninth Circuit and motion to stay the injunction in the interim. Indeed, on September 28, 2020, the Secretary of Commerce announced "a target date of October 5, 2020 to conclude 3030 Census self-response and field data collection operations,"[8] and "census takers across the US [have] told The Associated Press that they were being pressured to meet the Sept. 30 deadline, even after [Judge] Koh issued her injunction." Mike Schneider, "U.S. official: 2020 Census to end Oct. 5 despite court order," Associated Press (Sept. 28, 2020) (copy attached to Sampson Aff. at Exh. 7). If this Court were to deny Plaintiffs' Motion for Expedited Discovery, there would likely be little or no time to conduct discovery before the 2020 Census is completed. Adhering to the ordinary discovery timeline would likely prejudice Plaintiffs, their members, and their client communities.

Expedited discovery is particularly warranted where the extreme time sensitivity is entirely of Defendants' own making. As noted in the Statement from the White House Press Secretary, Defendants have been gathering data to carry out the policy set forth in the July 21 Memorandum since at least July 11, 2019, when the President issued an Executive Order on Collecting Information About Citizenship Status in Connection with the Decennial Census

---

[8] *See* Press Release No. CB20-RTQ.35, 2020 Census Update (Sept. 28, 2020) (available at https://www.census.gov/newsroom/press-releases/2020/2020-census-update.html).

(Executive Order 13880). However, Defendants delayed in promulgated the Memorandum until July 21, 2020, months after the census had begun, before moving to reduce the time for census-taking by a full month, until they were enjoined by the Northern District of California. The need for expedited discovery is thus a consequence of Defendants' own timing.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant its Motion for Expedited Discovery, and order (1) that the Defendants must serve responses and produce documents in response to Plaintiffs' document requests by October 14, 2020, and (2) that the Defendants must designate and produce a designee (or designees) to testify on the topics set forth in Plaintiffs' Rule 30(b)(6) Notice on October 16, 2020.

> HAITIAN-AMERICANS UNITED, INC.,
> BRAZILIAN WORKER CENTER,
> CHELSEA COLLABORATIVE, INC., and
> CENTRO PRESENTE
>
> By their attorneys,
>
> /s/ Patrick M. Curran, Jr.
> Neil V. McKittrick (BBO #551386)
> Patrick M. Curran, Jr. (BBO #659322)
> Anna B. Rao (BBO #703843)
> Ogletree, Deakins, Nash, Smoak
> & Stewart, P.C.
> One Boston Place, Suite 3220
> Boston, MA  02110
> Tel: (617) 994-5700
> Fax: (617) 994-5701
> neil.mckittrick@ogletreedeakins.com
> patrick.curran@ogletreedeakins.com
> anna.rao@ogletreedeakins.com
>
>
> Oren Sellstrom (BBO #569045)
> Lauren Sampson (BBO #704319)
> Lawyers for Civil Rights

                                            61 Batterymarch Street, 5th Floor
                                            Boston, MA 02110
                                            (617) 988-0609
                                            lsampson@lawyersforcivilrights.org

Dated:  September 30, 2020

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 30, 2020, the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent by mail to those indicated as non-registered participants on September 30, 2020.

      /s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr.

42243729.1