# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAITIAN-AMERICANS UNITED, INC., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States in his Official Capacity, *et al.*,<br><br>    Defendants. | Civil Action No. 1:20–cv–11421–DPW |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Plaintiffs filed their Complaint in this action over ten weeks ago, on July 27, 2020. Doc. 1 ("Compl."). In their July Complaint, Plaintiffs "urge[d] this court to act *immediately* to prevent" Defendants from supposedly "impeding the conduct of Census 2020." Compl. ¶ 1 (emphasis added). "*Immediate* intervention," they claimed, "is necessary to enjoin Defendants' [supposedly] unlawful conduct." *Id.* (emphasis added). "Without *immediate* action from this Court," Plaintiffs alleged, they "will continue to suffer irreparable harm to their memberships and organizational interests." *Id.* ¶ 6 (emphasis added). And "[u]nless Defendants' actions are enjoined *immediately*, before the conclusion of census-taking, there will be," they asserted, "an enormous undercount in the communities Plaintiffs serve." *Id.* ¶ 142 (emphasis added). "This [supposed] undercount *cannot later be remedied*." *Id.* (emphasis added).

Plaintiffs were aware at the outset of this litigation that census field operations would conclude at the end "of October 2020." *E.g.*, Compl. ¶ 97. But despite that impending deadline—a deadline that "may be even further truncated" depending on the outcome of other litigation, *see* Mem. in Supp.

of Pls.' Motion for Limited Expedited Discovery, Doc. 19 ("Pl. Mem.") at 3—Plaintiffs never moved for the "immediate" injunction they said was "necessary" to prevent a harm that, in their own words, "cannot later be remedied." Instead, Plaintiffs sat on their hands for over two months, while their alleged, unredressable harms presumably continued to accrue.

Only on September 30—over two months after the Complaint, and with just a month left to census field operations—did they file a motion. And that motion did not seek immediate injunctive relief; instead it asked for expedited discovery. Pls.' Mot. for Limited Expedited Discovery, Doc. 18 ("Pl. Mot."). In their motion, Plaintiffs ask the Court to allow them to serve broad written discovery with an October 14 return date, and a notice for a 30(b)(6) deposition scheduled for October 16. Pl. Mot. at 3. "[F]ollowing review of the discovery materials," only then do Plaintiffs say they might "fil[e] a motion for preliminary injunction or summary judgment." *See* Joint Notice, Doc. 15, at 2. The discovery requests Plaintiffs now seek to serve would impose significant burdens on Census Bureau staff at a crucial time. Diverting resources to respond to Plaintiffs' belated realization that their theory of harm required specific and immediate action (as they alleged in the Complaint) would ill-serve the very interests Plaintiffs claim to be vindicating with this lawsuit.

Plaintiffs admit that they "must show good cause" to obtain the expedited discovery that they now seek. Pl. Mem. at 5 (internal quotation marks omitted). Plaintiffs' delay—a delay that, by their own admission, has rendered most of the alleged harm moot, *see* Compl. ¶ 142—demonstrates that no good cause exists for the expedited discovery they now seek. Nor do Plaintiffs satisfy any of the other good-cause factors. Plaintiffs' motion for expedited discovery should be denied.

## ARGUMENT

As explained in Plaintiffs' primary expedited-discovery case, courts "ordinarily defer discovery while a motion to dismiss is pending." *Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018). And Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any

source before the parties have conferred as required by Rule 26(f) . . . or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). "In order for a party to obtain expedited discovery before the Rule 26(f) Conference, it must show good cause." *Momenta Pharms., Inc. v. Teva Pharms. Indus., Inc.*, 765 F. Supp. 2d 87, 88 (D. Mass. 2011).

In determining whether a party moving for expedited discovery has demonstrated "good cause," courts in this District have "analyzed the reasonableness of the request in light of all of the surrounding circumstances." *Id.* at 89 (internal quotation and alteration marks omitted); *see also* Pl. Mem. at 6 (same). In evaluating reasonableness, courts look to the following nonexclusive factors: (i) "the ability of the discovery to preclude demonstrated irreparable harm"; (ii) "the plaintiff's likelihood of success on the merits"; (iii) "the purpose for the discovery"; (iv) "the burden of discovery on the defendant"; and (v) "the degree of prematurity [of the requested discovery]." *Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89.

Plaintiffs satisfy none of these factors. Accordingly, Plaintiffs' motion for expedited discovery should be denied.

### A. Plaintiffs' Proposed Discovery Will Not Preclude Any Irreparable Harm

"Without a risk of irreparable harm, expedited discovery is unwarranted." *Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89; *accord Jimenez*, 326 F.R.D. at 361. Plaintiffs cannot demonstrate that the expedited discovery they now seek will preclude irreparable harm for several independent reasons.

*First*, Plaintiffs' "delay undercuts any argument [they are] at risk of suffering irreparable harm." *Bassett v. Jensen*, No. 18–cv–10576, 2019 WL 5457771, at *2 (D. Mass. Oct. 24, 2019) (Saris, C.J.). Indeed, Plaintiffs argue that "Defendants' recent representations underscore the need for discovery" Pl. Mem. at 8 (capitalization omitted), but the four filings they reference are not "recent" given the

3

fast-paced context in which the cited census lawsuits have been litigated.¹ Those filings date from August 19, 2020 (*six weeks* before Plaintiffs filed this motion) to September 10, 2020 (*nearly three weeks* before Plaintiffs filed this motion). *Id.* at 9 n.5. Plaintiffs "offer[] no excuse for the long delay in seeking . . . discovery," and their "inexplicably belated" request "obviously cuts against any argument that some irreparable injury is at stake." *Orlando v. CFS Bancorp, Inc.*, No. 2:13–cv–261, 2013 WL 12329547, at *2–3 (N.D. Ill. Oct. 10, 2013).

*Seccond*, and further undercutting the notion that they are suffering irreparable harm, Plaintiffs *still* have not moved for a preliminary injunction. "The majority of courts have held . . . that the fact that there was no pending preliminary injunction motion weighed against allowing plaintiff's motion for expedited discovery." *Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89; *see also, e.g.*, *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 68 (D.N.H. 2012) ("Here, there is no pending motion for preliminary injunctive relief. That weighs against Wilcox's request [for expedited discovery]."). "[T]he possibility that Plaintiff might seek injunctive relief in the future" does not "justif[y] an order for expedited discovery." *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004).

*Third*, the discovery Plaintiffs seek will not "preclude" any irreparable harm, *see Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89, because the Southern District of New York three-judge court has already entered all of the relief that Plaintiffs could possibly obtain here. *See New York v. Trump*, No. 20–cv–5770, -- F. Supp. 3d --, 2020 WL 5422959, at *34–36 (S.D.N.Y. Sept. 10, 2020), *appeal filed* No. 20–366 (S. Ct. docketed Sept. 22, 2020); *cf.* Compl. at 52 (prayer for relief). Because of the extant declaratory judgment and injunction, Plaintiffs are not currently suffering any harm, let alone irreparable harm. *See, e.g., Washington v. Trump*, No. C17–0141, 2017 WL 4857088, at *6 (W.D. Wash.

---

¹ For example, the Southern District of New York challenge, which was filed just three days before Plaintiffs' Complaint, has already been decided by that court, and is now on appeal in the Supreme Court.

Oct. 27, 2017) (because another district court had "already provide[d] Plaintiff States with virtually all the relief they seek," plaintiffs will not incur "any significant harm" by the court's staying consideration of their TRO motion); *Int'l Refugee Assistance Project v. Trump*, No. 17–cv–0361, 2017 WL 1315538, at *2 (D. Md. Apr. 10, 2017) ("[I]n light of the current nationwide injunction of Section 6 by the United States District Court of the District of Hawaii, a stay would not impose any hardship on Plaintiffs or result in irreparable harm."); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Hawaii 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage . . . if the Court were to grant Defendants' motion to stay.").

*Fourth*, even putting the *New York* declaratory judgment and injunction to the side, none of the discovery Plaintiffs seek would "preclude demonstrated irreparable harm." *Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89. Plaintiffs have not demonstrated any *irreparable* harm that any amount of expedited discovery could "preclude."

Plaintiffs advance two primary theories of harm: enumeration-related harm and apportionment-related harm. Expedited discovery will not "preclude" either of these supposed harms. As for enumeration-related harm, the schedule speaks for itself. Census field operations conclude at the end of the month (if not earlier), and Plaintiffs have indicated that they do not plan on even moving for a preliminary injunction or summary judgment until sometime after October 16. Thus, there is no realistic possibility that any relief the Court could enter at such a late hour (assuming Plaintiffs move for injunctive relief) would do anything to remedy any harm sustained. Indeed, as Plaintiffs forthrightly acknowledge in their Complaint, because they did not "immediately" seek injunctive relief when they filed their Complaint in July, the enumeration harms of which they complain "cannot be . . . remedied." Compl. ¶ 142. Accordingly, the expedited discovery Plaintiffs seek cannot "preclude . . . irreparable harm." *Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89

Regarding Plaintiffs' alleged apportionment-related harms, even assuming *arguendo* that they will imminently suffer harms from the upcoming apportionment (more on that below), the Supreme Court has made clear that apportionment harms are *not* irreparable. Indeed, apportionment cases are typically decided *post*-apportionment, when census enumeration procedures are no longer at issue and the actual apportionment figures are known. *See Utah v. Evans*, 536 U.S. 452, 463 (2002) ("Should the new report contain a different conclusion about the relative populations of North Carolina and Utah, the relevant calculations and consequent apportionment-related steps would be purely mechanical; and several months would remain prior to the first post–2000 census congressional election."); *see also, e.g.*, *Wisconsin v. City of New York*, 517 U.S. 1 (1996); *Franklin v. Massachusetts*, 505 U.S. 788 (1992); *Dep't of Commerce v. Montana*, 503 U.S. 442 (1992).

*Finally*, and perhaps most tellingly, Plaintiffs do not identify any irreparable harm that expedited discovery could preclude. They reason that without "expedited discovery, Defendants will continue to use their untested assertions regarding feasibility as a shield against Plaintiffs' claims, while simultaneously refusing to provide any information relevant to those assertions." Pl. Mem. at 6 (citation omitted). The possibility of a loss on a motion to dismiss—which simply tests the sufficiency of Plaintiffs' well-pled allegations—does not constitute irreparable harm.[2]

In all events, Plaintiffs' complaints about Defendants' "untested assertions regarding feasibility," *id.*, are misplaced. In parallel litigation, other plaintiffs have alleged apportionment-related injuries based on the theory that an "expected loss of a Representative to the United States Congress . . . satisfies the injury-in-fact requirement of Article III standing." *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331 (1999). And in other cases, Defendants argued that such

---

[2] Plaintiffs cannot backfill their deficient argument on reply. "Where . . . a moving party raises an argument for the first time in a reply brief, that argument is waived." *Napert v. Gov't Emps. Ins. Co.*, No. 13–10530, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013).

6

claims were not constitutionally ripe. *See, e.g.*, Doc. 20–1, Def. Mem. in *Common Cause v. Trump*, No. 1:20–cv–02023 (D.D.C. Sept. 2, 2020), § I.A.1.  Here, however, Plaintiffs do not come close to alleging *any* apportionment-related injury and, accordingly, as explained in Defendants' motion to dismiss, there is no need for this Court to engage in any protracted analysis about ripeness or feasibility.  *See* Doc. 26 ("Def. Mem.") § I.A.1(c).[3]

Plaintiffs' sole allegation about apportionment harm is this:  "According to the Center for Immigration Studies, the inclusion of *all immigrants*—including undocumented immigrants—in Census 2020 will be responsible for a shift of 26 House of Representatives seats, including an additional seat for Massachusetts."  Compl. ¶ 134 (emphasis added).  But nothing in the Memorandum calls for the exclusion of *all immigrants* from the apportionment base.  Rather, the Memorandum simply directs the exclusion of *illegal* aliens from the apportionment base—and only to the extent feasible, practicable, and consistent with law and the President's discretion.

The Court need not dwell long on what might be, say, feasible or practicable, because even assuming *arguendo* that *all* illegal aliens will be excluded from the apportionment base, Plaintiffs have not alleged that the exclusion of *all* illegal aliens would have any effect on the number of Representatives allotted to Massachusetts.  In fact, the article that they reference in their apportionment allegation indicates that the exclusion of "[i]llegal immigrants alone" in the 2020 census would only cause a loss of representation in California, New York, and Texas—and thus will not cause *any* loss of representation in Massachusetts.  *See* Steven A. Camarota & Karen Zeigler, *The Impact of*

---

[3]    Defendants explain that Plaintiffs' apportionment-related claims are not *prudentially* ripe because apportionment claims are properly decided after the apportionment is made. *See* Def. Mem. § I.C. But Defendants are not levelling the more-extensive ripeness arguments that they have asserted in other litigation. *Compare id. with, e.g.*, Doc. 20–1, Def. Mem. in *Common Cause v. Trump*, No. 1:20–cv–02023 (D.D.C. Sept. 2, 2020), § I.A. Defendants have no need to do so here because Plaintiffs have not alleged an apportionment injury at all.

*Legal and Illegal Immigration on the Apportionment of Seats in the U.S. House of Representatives in 2020* (Dec. 19, 2019), *available at* https://cis.org/Report/Impact-Legal-and-Illegal-Immigration-Apportionment-Seats-US-House-Representatives-2020 (last visited Oct. 4, 2020).[4]  Not only have Plaintiffs failed to plausibly plead any apportionment injury, their Complaint only proves that they will suffer no apportionment injury at all.[5]

In sum, Plaintiffs have not explained how the expedited discovery they seek would "preclude demonstrated irreparable harm." *Momenta Pharms., Inc.*, 765 F. Supp. 2d at 89.  And Defendants have explained that there is no irreparable harm, let alone irreparable harm that could be "preclude[d]" with expedited discovery.  Again, "[w]ithout a risk of irreparable harm, expedited discovery is unwarranted." *Id.*; *accord Jimenez*, 326 F.R.D. at 361.

### B. Plaintiffs Are Not Likely To Succeed on the Merits

Expedited discovery is also not warranted because Plaintiffs are not likely to succeed on the merits.  Defendants' contemporaneously filed motion to dismiss makes clear that the Court lacks subject-matter jurisdiction over this action and—even assuming *arguendo* that the Court had jurisdiction to entertain this action—Plaintiffs fail to state a single claim as a matter of law. *See generally* Def. Mem. § II.

In support of this factor, Plaintiffs argue:  (i) that the Memorandum violates the Fourteenth Amendment's Apportionment Clause; and (ii) that the *New York* court has already ruled against Defendants.  Pl. Mem. at 6–7.  Neither argument reflects a likelihood of success on the merits.  As to Plaintiffs' first argument, Plaintiffs do not even assert an Apportionment Clause claim in their

---

[4]  In evaluating a motion to dismiss, district courts may "augment the[] facts and inferences" from the Complaint with, *inter alia*, "data points gleaned from documents incorporated by reference into the complaint." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

[5]  For this reason, Plaintiffs' argument regarding feasibility, *see* Pl. Mem. at 8–12, is entirely irrelevant.

Complaint. Rather, Plaintiffs only reference the Apportionment Clause as part of one of their Administrative Procedure Act claims against the Department of Commerce. *See* Compl. ¶ 149. But as Defendants have explained, Plaintiffs' APA claims are foreclosed by *Franklin*, which made clear that the Secretary's report to the President is "not final and therefore not subject to [APA] review." 505 U.S. at 798. *See generally* Def. Mem. § II.A.1. And even if Plaintiffs had leveled a standalone Apportionment Clause claim, that claim would fail as a matter of law. *See generally id.* § II.A.2.

Nor does the *New York* decision suggest that Plaintiffs here are likely to succeed on the merits. For starters, Plaintiffs have not plausibly pled standing. *See generally id.* § I.A. And owing to Plaintiffs' decision to delay prosecuting this action, their enumeration claims are moot. *See generally id.* § I.B. Accordingly, the Court should not even reach the merits of Plaintiffs' claims. But even if the Court considers the merits of Plaintiffs' claims, Defendants have appealed the *New York* judgment to the Supreme Court, and have made clear in their Jurisdictional Statement that the *New York* decision was wrongly decided. *See* Ex. A, Defendants' Jurisdictional Statement in *Trump v. New York*, No. 20–366 (S. Ct. Sept. 22, 2020). If nothing else, *New York* only shows that it is possible for Plaintiffs to prevail *without* resort to expedited discovery (which would impose significant burdens on the Census Bureau at a crucial time, as discussed below).

### C. Plaintiffs' Proposed Discovery Has No Valid Purpose

Plaintiffs argue that "the purpose of the discovery" is "to gather critical evidence necessary to counter Defendants' ripeness argument and to support the merits of [their] claims." Pl. Mem. at 6. But Defendants are not raising the "ripeness argument" that Plaintiffs wrongly anticipated. And the remainder of Plaintiffs' proposed discovery has nothing to do with the claims they have brought in this action. Accordingly, the motion should be denied because their proposed expedited discovery has no valid purpose.

The bulk of Plaintiffs' proposed discovery—nine of Plaintiffs' ten proposed requests for production by Defendants' count, *see* Doc. 21, and nearly all of the topics on their 30(b)(6) deposition notice, *see* Doc. 22—relate to the ripeness argument that Defendants have raised elsewhere but which, as explained above, they are not raising in their motion to dismiss in this action. *See* Def. Mem. § I.A.1(c). To be clear, Plaintiffs would not be entitled to such discovery in any event. After all, they chose to bring a facial challenge rather than wait until the Memorandum was implemented. But in any event, nearly all of Plaintiffs' discovery is keyed to an argument that Defendants are not even raising and thus has no valid purpose.

The remaining bits of Plaintiffs' sought-after discovery relate to the use of statistical sampling. Docs. 21 & 22. But the use of statistical sampling has nothing to do with "the merits of Plaintiffs' claims." Pl. Mem. at 6. Although *other* plaintiffs have asserted claims that Defendants might resort to statistical sampling in violation of 13 U.S.C. § 195, *see, e.g.*, Doc. 20–1, Def. Mem. in *Common Cause v. Trump*, No. 1:20–cv–02023 (D.D.C. Sept. 2, 2020), § II.E.2–3, Plaintiffs have not done so. *See generally* Compl. ¶¶ 146–182 (Plaintiffs' causes of action). Discovery relating to statistical sampling thus has nothing to do with the merits of Plaintiffs' actual claims.[6]

Accordingly, none of Plaintiffs' proposed discovery has any valid purpose.

### D.  Plaintiffs' Proposed Discovery Will Impose a Significant Burden on Defendants

Plaintiffs argue that the discovery they are seeking "is limited" and "narrowly tailored." It is not. Plaintiffs' ten document requests seek "[a]ll documents and all communications" concerning extraordinarily broad topics like "the feasibility of implementing the" Memorandum and "any data,

---

[6]  Plaintiffs may argue that such evidence goes toward their Enumeration Clause claim. *See* Compl. ¶¶ 158–164. Even assuming that discovery about statistical sampling could be relevant to *an* Enumeration Clause claim, it is not relevant to *Plaintiffs'* Enumeration Clause claim. Plaintiffs' Enumeration Clause claim is premised entirely on the theory that the Memorandum is "chill[ing] immigrant participation in the ongoing 2020 Census." *Id.* ¶ 160.

estimates, or analyses regarding the number of 'illegal aliens' in the country or in any state or other political subdivision thereof." Doc. 21 at 4–5. And the document requests are directed to all "employees, agents . . . or other persons acting on" behalf of the Department of Commerce and the Census Bureau, which may include even the hundreds of thousands of enumerators that have worked on census field operations to date. *See id.* at 1 (defining "You" and "Your"), *id* at 3 (Instruction 2). Plaintiffs' document requests are thus facially overbroad and unduly burdensome. *See, e.g.*, *Skyhook Wireless, Inc. v. Google, Inc.*, No. 10–cv–11571, 2013 WL 5933926, at *1 (D. Mass. Oct. 30, 2013) ("In some instances, plaintiff's requests for 'all documents' are overbroad and burdensome."); *Wilcox Indus. Corp.*, 279 F.R.D. at 71 ("[T]he four requests for 'any' documents or other information . . . could result in rather voluminous production.").

The burdensome nature of Plaintiffs' discovery requests is compounded by three factors. *First*, if Plaintiffs are permitted to serve these discovery requests, they would be requesting "all documents and all communications" relating to very broad topics and a 30(b)(6) deponent, all on a significantly accelerated timeframe. Plaintiffs could have moved for this same discovery in late July or early August, at which point responding to these discovery requests might have been more feasible,[7] yet for reasons unexplained, Plaintiffs waited until the tail end of September to file this motion. *Second*, Plaintiffs' discovery requests would likely implicate multiple privileges, such as the deliberative-process privilege, and thus would require Defendants to assert those privileges on an accelerated basis. *Finally*, Plaintiffs' discovery requests would necessarily divert the attention of many Census Bureau employees in the crucial, waning hours of census field operations—exactly when their time and focus is needed the most to ensure an accurate census.

---

[7] Of course, if the Court allows Plaintiffs to serve these discovery requests, Defendants are ready to meet and confer with Plaintiffs about the scope of their requests, and will comply with their discovery obligations to the extent possible.

### E. Plaintiffs' Proposed Discovery Is Premature

"The requirement of subject-matter jurisdiction relates directly to the constitutional power of a federal court to entertain a cause of action." *Prou v. United States*, 199 F.3d 37, 45 (1999). Defendants have moved to dismiss this action in part because the Court lacks subject-matter jurisdiction over this action. *See* Def. Mem. § I. No discovery is needed to resolve this question, as Defendants' arguments are based entirely on the sufficiency of Plaintiffs' complaint (or lack thereof). Accordingly, the Court should "first determine whether it has subject matter jurisdiction over the plaintiffs' claims" "[b]efore deciding any other issue." *Nollet v. Justices of the Trial Court of the Commonwealth of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000) (per curiam). For this reason, Plaintiffs' requested discovery is premature. *Cf. Wilcox Indus. Corp.*, 279 F.R.D. at 72 ("Many of Wilcox's requests are directed toward ALST, over which the court may lack personal jurisdiction. It is difficult to see how justice would be served by putting ALST to the trouble of producing the information Wilcox seeks before Judge Barbadoro determines whether this court even has personal jurisdiction over ALST in the first instance."). And even putting aside jurisdictional issues, "the mere pendency of" Defendants' "motion to dismiss weighs in favor of denying" Plaintiffs' "request for expedited discovery." *Id.*

## CONCLUSION

Plaintiffs have not demonstrated good cause to obtain the expedited discovery that they now seek. Accordingly, Plaintiffs' motion for expedited discovery should be denied.

DATED:  October 7, 2020                    Respectfully submitted,

                                              JEFFREY BOSSERT CLARK
                                              Acting Assistant Attorney General

                                              JOHN V. COGHLAN
                                              Deputy Assistant Attorney General

                                              ALEXANDER K. HAAS
                                              Branch Director

                                              DIANE KELLEHER
                                              BRAD P. ROSENBERG
                                              Assistant Branch Directors

                                              <u>/s/ Elliott M. Davis</u>
                                              ELLIOTT M. DAVIS
                                              Trial Attorney
                                              Civil Division, Federal Programs Branch
                                              U.S. Department of Justice
                                              1100 L St. NW
                                              Washington, DC  20005
                                              Phone:   (202) 353-5639
                                              Fax:       (202) 616-8470
                                              E-mail:   elliott.m.davis@usdoj.gov

                                              *Counsel for Defendants*