## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HAITIAN-AMERICANS UNITED, INC., BRAZILIAN WORKER CENTER, CHELSEA COLLABORATIVE, INC. and CENTRO PRESENTE,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States in his Official Capacity, UNITED STATES DEPARTMENT OF COMMERCE, UNITED STATES BUREAU OF THE CENSUS, STEVEN DILLINGHAM, Director of the U.S. Census Bureau in his Official Capacity, and WILBUR ROSS, Secretary of the Department of Commerce in his Official Capacity,<br><br>Defendants. | Case No. 20-11421-DPW-BMS-PBS<br><br>**Leave to file granted on October 9, 2020** |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY

Plaintiffs file this Reply to address two discrete issues in Defendants' Opposition to their Motion for Limited Expedited Discovery. First, although Defendants claim that expedited discovery is unwarranted based on the time that has elapsed since the filing of the Complaint, this contention does not account for recent public statements by Defendants that gave rise to Plaintiffs' request for limited expedited discovery in the first place. Plaintiffs have acted diligently, and in a manner that took into account both the quickly-changing circumstances in parallel litigation and the desire to preserve judicial economy. Second, while Defendants argue that Plaintiffs' proposed discovery has "nothing to do with the claims they have brought in this action," this is simply not true; the

1

narrowly-tailored discovery that Plaintiffs seek bears directly on their claims. Accordingly, Plaintiffs request that the Court grant their Motion for Limited Expedited Discovery.

## Argument

I. **Defendants' Opposition Ignores Their Recent Representations That Gave Rise to Plaintiffs' Request for Expedited Discovery.**

Defendants focus on four filings from August 19, 2020 to September 10, 2020 to support their claim that Plaintiffs' request for discovery is based on statements that "are not 'recent' given the fast paced context in which the cited census lawsuits have been litigated." ECF 27. However, Defendants fail to address Plaintiffs' list of far more "recent representations," all of which immediately preceded Plaintiffs' request for expedited discovery, that suggest that Defendants have in fact decided on a methodology to implement the Presidential Memorandum. For example, on September 16, 2020, the government filed a Memorandum of Law in Support of their Motion for Stay of Judgment Pending Appeal, in *New York v. Trump*, Case No. 20-CV-5770 (RCW) (PWH) (JMF), ECF No. 172, arguing, in relevant part, that it would be irreparably harmed without a stay because the Secretary of Commerce and the President will be forced to produce reports by the statutory deadlines that do not reflect the policy judgment expressed in the Presidential Memorandum to exclude undocumented immigrants from the apportionment counts. But that argument—made for the first time in that Memorandum and at odds with the government's position throughout that litigation—is factually plausible only if Defendants have already decided, or are imminently to decide, on a methodology to implement the Presidential Memorandum's policy, given that the *New York* panel explicitly declined to enjoin Defendants from merely "taking steps to research whether or how the Presidential Memorandum could be implemented." *New York v. Trump*, __ F. Supp. 3d __, 2020 WL 5422959 at *35 (S.D.N.Y. Sept. 10, 2020). Prior to this statement, there was no indication that Defendants had already made a decision concerning

implementation, or that such a decision was imminent. Following this revelation, Plaintiffs moved quickly to file the instant Motion for Limited Expedited Discovery.

Further, as Defendants note, six other lawsuits challenging the lawfulness of the Presidential Memorandum are in various stages of litigation, with an additional lawsuit pending as to the decision to shorten the census timeline. Accordingly, in the interest of judicial economy Plaintiffs have not moved to secure relief in this Court that has already been obtained elsewhere, while remaining alert as to how developments in the related cases impact this proceeding. In addition, courts have not hesitated to grant expedited discovery to plaintiffs before the filing of a motion for preliminary injunction where, as here, such discovery is aimed at uncovering evidence in support of their preliminary injunction motion. *See, e.g., OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (granting motion for expedited discovery in anticipation of plaintiff's motion for preliminary injunction and noting that plaintiff will "potentially be unfairly prejudiced" absent discovery without "an early opportunity to develop evidence for use in support" of a motion for preliminary injunction).

II. **Limited Expedited Discovery is Relevant to and Integral for the Merits of Plaintiffs' Claims.**

In their Opposition, Defendants argue that the Southern District of New York three-judge court has already entered all of the relief that Plaintiffs could possibly obtain here. But this argument ignores both the posture of that litigation and the basis of the panel's ruling.

As to the first, as Defendants acknowledge in the very same sentence claiming Plaintiffs have received all the relief they need, the opinion and order in *New York v. Trump* is currently on appeal to the United States Supreme Court, while Defendants simultaneously seek a stay of that order pending the appeal. Defendants even moved for *expedited* consideration of their jurisdictional statement and for expedition of any plenary consideration of the appeal if the stay motion was not

3

granted. *Trump v. New York,* No. 20-366, Mot. for Expedited Consideration of the Jurisdictional Statement (Sept. 2020). On September 30, 2020—hours before Plaintiffs filed the instant Motion—the Supreme Court granted in part the government's motion to expedite consideration of the jurisdictional statement. No. 20-366, Order in Pending Case (Sept. 30, 2020). Unlike the cases cited in Defendants' Opposition, *see, e.g., Washington v. Trump*, No. C17-0141, 2017 WL 4857088 (W.D. Wash. Oct. 27, 2017), Plaintiffs here are not asking the Court to grant injunctive relief or to deny a stay. Instead, the request is far narrower: Plaintiffs seek limited discovery in an expedited fashion, so that if *New York v. Trump* is reversed, which Defendants are seeking to accomplish as quickly as possible, Plaintiffs will be able to move speedily for relief on other grounds not at issue in that proceeding.

As to the basis of the panel's ruling, the Southern District of New York did not reach the question of whether the plaintiffs had established jurisdiction based on their apportionment harms; instead, the panel based its decision on the harms caused by the Presidential Memorandum to the ongoing census count. __ F. Supp. 3d ___, 2020 WL 5422959 at *15. Contrary to Defendants' assertions, Plaintiffs have pled apportionment harms to themselves, their members, and their client communities. The discovery Plaintiffs seek is directly relevant to these harms: specifically, the impact of an improper mechanism for identifying and removing undocumented immigrants from the congressional apportionment base.

Throughout the Complaint, Plaintiffs emphasize that there presently exists no accurate measure to count and exclude the number of undocumented residents from the congressional apportionment base, *see* Compl. ¶¶ 88-98, that removing undocumented immigrants from the apportionment base will "alienate Latinx voters and voters of color, while simultaneously diminishing the voting power of these groups," Compl. ¶ 131, that dignitary harms have been

4

incurred by the "ongoing efforts" to "dilute and diminish" the political representation of Plaintiffs and their members, Compl. ¶ 132, that undocumented immigrants comprise approximately 4% of the Commonwealth's total population and that over 230,000 people live with at least one undocumented family member, Compl. ¶ 133, and that the exclusion of resident immigrants from the congressional apportionment would result, as relevant here, in the "redrawing of congressional boundaries . . . in a manner that would harm Plaintiffs and the communities they serve." Compl. ¶ 135.

In support of the allegations, Plaintiffs have sought discovery that would explain what methodology, if any, the Census Bureau is considering to identify and exclude undocumented immigrants from the apportionment base, including information about the degree to which statistical sampling is being utilized and what methodologies exist for ensuring the government "does not misidentify, mislabel, or exclude U.S. citizens, legal permanent or conditional residents, and other legal aliens from the congressional apportionment base in seeking to effectuate" the July 21 Memorandum. Exh. 1 to Pls. Mot. for Limited Expedited Disc., ECF 21 at 6; Exh. 2 to Pls. Mot. for Limited Expedited Disc., ECF 22 at 8. Given the absence of any dataset specifically identifying and geographically locating undocumented immigrants, there is a significant and justified concern that the Census Bureau will exclude too many individuals, including and especially the household members of undocumented immigrants, as well as lawfully present immigrants, from the apportionment base. This over-inclusion would have dire effects for immigrant rights organizations like Plaintiffs, their members, and their client communities, ranging from the potential loss of a congressional seat, to the redrawing of congressional boundaries, to impacts on intrastate redistricting, as Massachusetts is required to use the decennial census in its redistricting. *See, e.g.,* Mass. Const. Amend. art. CIX ("[E]very person shall be considered an inhabitant of the city or town

of his usual place of residence in accordance with standards used by the United States from time to time in conducting the federal census required by Section 2 of Article I of the Constitution."); *id.*, art. CXVII, CXIX (stating federal census "shall be the basis" for determining representative, senatorial, and councilor districts for the ten year period). Defendants' crabbed reading of the Complaint should not forestall Plaintiffs' access to expedited discovery.

## CONCLUSION

For the reasons set forth above, as well as in their motion and initial supporting memorandum, Plaintiffs respectfully request that this Court grant their Motion for Limited Expedited Discovery.

        **HAITIAN-AMERICANS UNITED, INC., BRAZILIAN WORKER CENTER, CHELSEA COLLABORATIVE, INC., and CENTRO PRESENTE**

By their attorneys,

*/s/ Patrick M. Curran, Jr.*
Neil V. McKittrick (BBO #551386)
Patrick M. Curran, Jr. (BBO #659322)
Anna B. Rao (BBO #703843)
Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA  02110
Tel: (617) 994-5700
Fax: (617) 994-5701
neil.mckittrick@ogletreedeakins.com
patrick.curran@ogletreedeakins.com
anna.rao@ogletreedeakins.com

Oren Sellstrom (BBO #569045)
Lauren Sampson (BBO #704319)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 988-0609
lsampson@lawyersforcivilrights.org

Dated:  October 9, 2020

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 9, 2020, the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent by mail to those indicated as non-registered participants on October 9, 2020.

                            */s/ Patrick M. Curran, Jr.*
                            Patrick M. Curran, Jr.

44530639.1