# EXHIBIT A

Cite as: 592 U. S. \_\_\_\_ (2020) 1

Sotomayor, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 20A62

WILBUR ROSS, SECRETARY OF COMMERCE, et al. *v.* NATIONAL URBAN LEAGUE, et al.

ON APPLICATION FOR STAY

[October 13, 2020]

 The application for stay presented to Justice Kagan and by her referred to the Court is granted. The district court's September 24, 2020 order granting a preliminary injunction is stayed pending disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

 Justice Sotomayor, dissenting from grant of stay.

 Today, the Court stays a preliminary injunction requiring the Census Bureau to follow the data collection plan the agency once described as necessary to avoid "risking significant impacts on data quality." Electronic Case Filing in No. 5:20–cv–5799, Doc. 198–7 (ND Cal., Sept. 22, 2020), p. 131 (ECF). The injunction required the Bureau to continue its data collection efforts until October 31, 2020, a deadline the Bureau itself selected in response to the significant operational disruptions caused by the COVID–19 pandemic. The Government now claims that this Court's immediate intervention is necessary because, absent a stay, the Bureau will not be able to meet the December 31 statutory deadline for reporting census results to the President. This

2  ROSS *v.* NATIONAL URBAN LEAGUE

S&#x03BF;TOMAYOR, J., dissenting

representation is contrary to the Government's repeated assertions to the courts below that it could not meet the statutory deadline under any circumstances. Moreover, meeting the deadline at the expense of the accuracy of the census is not a cost worth paying, especially when the Government has failed to show why it could not bear the lesser cost of expending more resources to meet the deadline or continuing its prior efforts to seek an extension from Congress. This Court normally does not grant extraordinary relief on such a painfully disproportionate balance of harms.

I

In April 2020, the Bureau extended the deadline for self-responses to the census questionnaire and for its Non-Response Follow-Up field operation from July 31, 2020, to October 31, 2020. In the words of the Bureau's associate director for field operations, it was "ludicrous" to expect the Bureau to "complete 100% of the nation's data collection earlier than [October 31]" in the middle of a pandemic. ___ F. Supp. 3d ___, ___, 2020 WL 5739144, *6 (ND Cal., Sept. 24, 2020).

The Bureau also rescheduled its anticipated report to the President. Under the Census Act, the Secretary of Commerce must deliver to the President a report conveying the results of the census by December 31, 2020. 13 U. S. C. §141(b). The Bureau, however, moved this deadline to April 30, 2021. President Trump did not initially object, publicly stating that "'I don't know that you even have to ask [Congress]. This is called an act of God. This is called a situation that has to be.'" ___ F. Supp. 3d, at ___, 2020 WL 5739144, *37. The Bureau nonetheless requested that Congress formally extend the December 31 statutory deadline by 120 days. The House of Representatives passed a bill extending the deadline, and on July 23, 2020, a Senate Committee held a hearing on the bill.

On August 3, 2020, however, two weeks after President

Cite as: 592 U. S. ____ (2020) 3

SOTOMAYOR, J., dissenting

Trump announced his intent to exclude undocumented immigrants from the population base for congressional apportionment, Secretary Ross announced the "Replan Schedule." Under the Replan Schedule, data collection would end on September 30, 2020. The administration simultaneously stopped pushing Congress to extend the reporting deadline by 120 days.

## II

Respondents, who are advocacy groups, cities, counties, and Native tribes, sued to enjoin the Replan Schedule. The District Court issued detailed factual findings, concluding that respondents had demonstrated a likelihood of success on the merits of their claim that the Bureau's reversal was arbitrary and capricious,[1] and that the harms to respondents absent an injunction vastly outweighed any harm the injunction would cause the Government. The court preliminarily enjoined the Replan Schedule's September 30 deadline for completing data collection (*i.e.,* the deadline for individuals to complete the census questionnaire and for the Bureau to wrap up its field operations) and the December 31 deadline for reporting the results to the President. The District Court subsequently clarified that the Bureau's original October 31 deadline for data collection would be reinstated. The Court of Appeals for the Ninth Circuit reversed the injunction as to the December 31 deadline, but affirmed the reinstatement of the October 31 deadline. The Government now asks this Court to intervene and stay the

---

[1] Specifically, the District Court concluded that respondents were likely to succeed because the Government failed to consider important aspects of the problem; the Replan Schedule ran counter to the evidence before the agency; the Government failed to consider an alternative to and articulate a satisfactory explanation for its decision to adopt the Replan; and the Government failed to consider reliance interests of municipalities and organizations who publicized the October 31 deadline to their communities. ___ F. Supp. 3d ___, ___–___, 2020 WL 5739144, *29–*45 (ND Cal., Sept. 24, 2020).

SOTOMAYOR, J., dissenting

entire injunction.

I would deny a stay of that injunction. An applicant for a stay "must demonstrate (1) 'a reasonable probability' that this Court will grant certiorari, (2) 'a fair prospect' that the Court will then reverse the decision below, and (3) 'a likelihood that irreparable harm [will] result from the denial of a stay.'" *Maryland* v. *King*, 567 U. S. 1301 (2012) (ROBERTS, C. J., in chambers) (quoting *Conkright* v. *Frommert*, 556 U. S. 1401, 1402 (2009) (Ginsburg, J., in chambers)). The Government fails to demonstrate that the injunction is likely to cause it irreparable harm. Regardless of the merits of respondents' claims, this failure, alone, requires denying the requested stay.

The Government articulates a single harm: that if data collection continues through October 31, the Bureau will not meet the December 31 statutory deadline to report census results to the President. But it is unlikely the District Court's injunction will be the cause of the Bureau's inability to do so. Indeed, for months, senior Bureau officials have represented that, whatever the data collection deadline, meeting the December 31 reporting deadline would be impossible. See ___ F. 3d ___, ___, 2020 WL 5940346, *6 (CA9, Oct. 7, 2020) ("[T]he President, Department of Commerce officials, Bureau officials, and outside analysis from the Office of the Inspector General, the Census Scientific Advisory Committee, and the Government Accountability Office all stated unequivocally, some before and some after the adoption of the Replan, that the Bureau would be unable to meet [the December 31] deadline under any conditions"). Only recently have officials begun to claim that the Bureau might yet be able to meet the statutory deadline, and even then, their story keeps changing. See *ibid.* (noting that the Government's representation that it could meet the statutory deadline if it ended collection by October 5 was at odds with the September 22 declaration of a senior Bureau official). It is in fact far from clear why the Government now

believes that the December 31 deadline was feasible under the Replan Schedule but is impossible under the injunction. Notably, the Government fails to explain why it cannot meet the statutory deadline by adding resources to accelerate data processing as it did with data collection. App. to Application for Stay 117a (Census Bureau press release explaining that the Replan Schedule required "hiring of more employees to accelerate the completion of data collection and apportionment counts").

That the Bureau has provided "ever-changing projections" about the impact of the data collection deadline on its statutory deadline is understandable given the complexity of the census and the unanticipated impact of the COVID–19 pandemic. ___ F. 3d, at ___, 2020 WL 5940346, *7; see also ___ F. Supp. 3d, at ___–___, 2020 WL 5739144, *4–*6. But those ever-changing projections demonstrate that any harm attributable to the injunction is at best uncertain, and, more likely, nonexistent. This is especially true given that, until recently, the Bureau sought an extension of the December 31 statutory deadline, and Congress had made significant progress toward granting it. The Bureau's abrupt shift in focus from achieving an accurate count to meeting its deadline at all costs belies its newfound concern for issuing its report by December 31. See *New York* v. *Trump*, ___ F. Supp. 3d ___, ___, 2020 WL 5796815, *2 (SDNY, Sept. 29, 2020) ("As [the Government] admits, there is no magic to the deadline for the Secretary's Section 141(b) report" to the President).

In contrast to the Government's unsupported claims of irreparable harm, respondents will suffer substantial injury if the Bureau is permitted to sacrifice accuracy for expediency. As the District Court found, and the Ninth Circuit credited, "[a]n inaccurate count would affect the distribution of federal and state funding, the deployment of services, and the allocation of local resources." ___ F. Supp. 3d, at ___, 2020 WL 5739144, *46; ___ F. 3d, at ___, 2020

WL 5940346, *6. The Government attempts to downplay that risk by asserting that over 99 percent of households in 49 States are already accounted for.[2] Reply Brief 6. But even a fraction of a percent of the Nation's 140 million households amounts to hundreds of thousands of people left uncounted. See ECF Doc. 81–1, ¶ 36 (ND Cal., Sept. 4, 2020). And significantly, the percentage of nonresponses is likely much higher among marginalized populations and in hard-to-count areas, such as rural and tribal lands. *Id.*, ¶ 12 (discussing the Bureau's plan to develop "culturally relevant advertisements targeting hard-to-count communities"); Response to Application 30. When governments allocate resources using census data, those populations will disproportionately bear the burden of any inaccuracies. See *Department of Commerce* v. *New York*, 588 U. S. ___, ___ (2019) (slip op., at 10) (States "show[ed] that if noncitizen households are undercounted by as little as 2% . . . they will lose out on federal funds that are distributed on the basis of state population"). It is thus unsurprising that, for the 2010 census, the Bureau continued its field operations for a full month after reaching the 99 percent threshold that the Government now deems good enough. See Response to Application 29–30 (citing Dept. of Commerce, Bureau of Census, A. Jackson, 2010 Census Nonresponse Followup Operations Assessment Report 47 (2012)). The harms caused by

---

[2] Although this claim bears significant weight for the Government's argument, the emergency posture of this case prevents this Court from properly evaluating the claim's accuracy. For example, as the District Court found, Government oversight bodies have repeatedly warned that accelerating the census schedule "increases the risks to obtaining a complete and accurate 2020 Census." ___ F. Supp. 3d, at ___–___, 2020 WL 5739144, *8–*9. Yet the Government addresses data quality concerns primarily in a footnote. Application for Stay 7–8, n. 3; Reply Brief 6–7. Without more, the Government's bald assertion that its collection efforts are 99 percent complete cannot support its request for extraordinary relief.

Cite as: 592 U. S. ____ (2020) 7

SOTOMAYOR, J., dissenting

rushing this year's census count are irreparable. And respondents will suffer their lasting impact for at least the next 10 years.

\* \* \*

The Government has not satisfied its "especially heavy burden" to justify a stay pending appeal of the lower court's injunction. *Packwood* v. *Senate Select Comm. on Ethics*, 510 U. S. 1319, 1320 (1994) (Rehnquist, C. J., in chambers). Because the harms associated with an inaccurate census are avoidable and intolerable, I respectfully dissent from the grant of stay.