**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| HAITIAN-AMERICANS UNITED, INC., BRAZILIAN WORKER CENTER, CHELSEA COLLABORATIVE, INC., CENTRO PRESENTE, GLADYS VEGA, NORIELIZ DEJESUS, ROY AVELLANEDA, DIEUFORT FLEURISSAINT, MARTHA FLORES, and JESSICA ARMIJO, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States in his Official Capacity, UNITED STATES DEPARTMENT OF COMMERCE, UNITED STATES BUREAU OF THE CENSUS, STEVEN DILLINGHAM, Director of the U.S. Census Bureau in his Official Capacity, and WILBUR ROSS, Secretary of the Department of Commerce in his Official Capacity, <br><br> Defendants. | Case No. 1:20-cv-11421-DPW-BMS-PBS |

**PLAINTIFFS' MEMORANDUM REGARDING THE PROPRIETY**
**OF A THREE-JUDGE COURT**

Plaintiffs Haitian-Americans United, Inc., Brazilian Worker Center, Chelsea Collaborative, Inc., Centro Presente, Gladys Vega, Norieliz DeJesus, Roy Avellaneda, Dieufort Fleurissaint, Martha Flores, and Jessica Armijo submit this Memorandum in response to the Court's request for briefing on the question "whether a three-judge court is appropriate for this case." ECF 34. As set forth below, a three-judge court is not only appropriate for this case, but is required by federal law—specifically, 28 U.S.C. § 2284(a), which provides for the convening of a three-judge court

1

when an action is filed "challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body," or when otherwise required by congressional act, such as 13 U.S.C. § 195.[1]

## BACKGROUND

On July 21, 2020, President Donald Trump issued a memorandum to the Secretary of Commerce entitled "Memorandum on Excluding Illegal Aliens from the Apportionment Base Following the 2020 Census" ("the July 21 Memorandum"). 85 Fed. Reg. 44,679 (July 23, 2020). In the July 21 Memorandum, the President stated that it is the "policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status under the Immigration and Nationality Act," and he specified that the inclusion of undocumented immigrants in the apportionment base "could result in the allocation of two or three more congressional seats than would otherwise be allocated." *Id.*, §2 at 44,680. The President also directed the Secretary of Commerce to "take all appropriate action," in preparing his report to the President under 13 U.S.C. § 141(b) providing a tabulation of the "total population by States . . . as required for the apportionment of Representatives in Congress among the several States" under 13 U.S.C. § 141(b), to "provide information permitting the President, to the extent practicable, to exercise the President's discretion to carry out" his policy of excluding undocumented immigrants from the congressional apportionment base. 85 Fed. Reg. 44,679, § 3 at 44,680.

On July 27, 2020, Plaintiffs filed their initial Complaint (ECF 1) in this action. In that Complaint, Plaintiffs alleged that the July 21 Memorandum (1) directs the Department of

---

[1] At the time the Court issued its order requiring this briefing, Plaintiffs had not yet filed their Amended Complaint. Now that an Amended Complaint has been filed, ECF 35, Plaintiffs, like the Defendants, focus on the propriety of a three-judge Court based on the allegations of the Amended Complaint. However, for the reasons stated in Sections I and III, *infra*, a three-judge court was also appropriately convened based on the original Complaint.

2

Commerce to violate the constitution and laws of the United States, and thus to violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(B) & (2)(C), (2) violates Article I, § 2 of the U.S. Constitution, which requires the Defendants to conduct an "actual Enumeration" of all persons in the United States for the purpose of congressional apportionment, (3) violates the requirement of 2 U.S.C. § 2a(a) that the President transmit to Congress a statement showing "the whole number of persons in each State" and the number of representatives to which each state was entitled based on that "whole number of persons," (4) directs the Department of Commerce and Secretary Ross to violate 13 U.S.C. § 141(b)'s requirement that they provide a "tabulation of total population by States," (4) violates the equal protection guarantee of the Fourteenth Amendment, made applicable to the Defendants through the Fifth Amendment, by denying equal protection of the laws to immigrants of color, non-U.S. citizens, foreign-born individuals, and undocumented individuals, and (5) was part of a conspiracy among the Defendants to violate the civil rights of immigrants of color, non-citizens, undocumented residents, and foreign-born individuals in violation of 42 U.S.C. § 1985(3).

On September 4, 2020, Plaintiffs filed an unopposed Application for the Appointment of a Three-Judge Court, pursuant to 28 U.S.C. § 2284(a) (ECF 7). In the Application and accompanying Memorandum, Plaintiffs observed that Section 2284(a) requires the appointment of a three-judge court in cases challenging "the constitutionality of the apportionment of congressional districts," and that Plaintiffs' Complaint constituted such a challenge. *See* Memorandum in Support of Plaintiffs' Application for the Appointment of a Three-Judge Court (ECF 8) at 1-2. This Court granted Plaintiffs' Application on September 11, 2020. *See* ECF 10.

On October 21, 2020, Plaintiffs filed their First Amended Complaint (ECF 35), which added six individual plaintiffs, added allegations concerning (among other things) the intrastate and

interstate apportionment harms caused by the July 21 Memorandum, and added causes of action against the Defendants for (a) employing statistical sampling in determining the population for purposes of apportionment in violation of 13 U.S.C. § 195, (b) violating Sections 706(2)(A) and 706(2)(D) of the APA, (c) violating Article I, § 2, cl. 3 and the Fourteenth Amendment, § 2, by excluding undocumented immigrants from the basis for congressional apportionment, and (d) violating the equal protection guarantee of the Fifth and Fourteenth Amendments by unlawfully diluting Plaintiffs' votes and causing them to suffer representational injuries. *See, e.g.*, Am. Compl., ECF 35, at ¶¶ 197-236, 249-269 & 285-291.

## ARGUMENT

### I. A Three-Judge Court is Required in this Case Because Plaintiffs are Challenging the Constitutionality of the Apportionment of Congressional Districts.

Under 28 U.S.C. § 2284(a), a "district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." With respect to apportionment challenges, the statute's requirements are met if "the complaint satisfies two criteria: (1) it commences an 'action challenging the constitutionality of the apportionment of congressional districts'; and (2) it presents a 'substantial federal question,' so that the complaint is 'justiciable in the federal courts.'" *Igartúa v. Trump*, 868 F.3d 24, 24-25 (1st Cir. 2017) (statement on denial of rehearing en banc) (internal citations omitted).

Plaintiffs' Amended Complaint easily satisfies each prong.

#### a. The Amended Complaint Presents a Constitutional Challenge to the Apportionment of Congressional Districts and Statewide Legislative Bodies.

The July 21 Memorandum directs the Secretary of Commerce to exclude undocumented immigrants from the congressional apportionment base, thereby altering the manner in which

members of Congress are apportioned among the several states. Additionally, because Massachusetts is constitutionally required to use federal apportionment data for intrastate redistricting, the July 21 Memorandum will also alter the manner in which the Commonwealth draws legislative districts and allocates senators and representatives in the Massachusetts Legislature. *See* Mass. Const. Amend. art. CIX ("[E]very person shall be considered an inhabitant of the city or town of his usual place of residence in accordance with standards used by the United States from time to time in conducting the federal census required by Section 2 of Article I of the Constitution."); *id.*, art. CXVII, CXIX (stating that the federal census "shall be the basis" for determining representative, senatorial, and councilor districts for the ten year period).

In their Amended Complaint, Plaintiffs allege that the Memorandum violates Article I, Section 2, Clause 3 of the U.S. Constitution and the Equal Protection Clause of the U.S. Constitution by excluding undocumented immigrants from the basis for congressional apportionment. This claim constitutes a "challeng[e] [to] the constitutionality of the apportionment of congressional districts" and to "the apportionment of any statewide legislative body" within the meaning of Section 2284(a), and thus it must be adjudicated by a three-judge court.

Courts hearing constitutional challenges to Executive Branch decisions that directly affect congressional apportionment have routinely appointed three-judge courts under Section 2284(a). *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 791 (1992) (reviewing decision of three-judge court regarding challenge to practice of allocating overseas federal employees to their designated home states); *Utah v. Evans*, 182 F. Supp. 2d 1165, 1167-68 (D. Utah 2001), *aff'd*, 536 U.S. 452 (2002) (three-judge court convened to address claims that defendants violated statutory provisions and the Constitution by refusing to count missionaries serving missions abroad); *see also Massachusetts v. Mosbacher*, 785 F. Supp. 230, 234-38 (D. Mass. 1992) (three-judge court statute

5

applies to interstate apportionment of House seats). This Court has also appointed three-judge panels in cases involving Equal Protection challenges to intrastate reapportionment. *See, e.g., Black Political Task Force v. Connolly*, 679 F. Supp. 109, 111 (D. Mass. 1988) (Woodlock, J.); *Black Political Task Force v. Galvin*, 300 F. Supp. 2d 291, 296 (D. Mass. 2004).

      At the October 16, 2020 hearing on this matter and in the subsequent order directing the parties to brief the three-judge court issue, the Court referred to *Alabama v. Department of Commerce*, 2:18-CV-00772-RDP, 2020 WL 5994259 (N.D. Ala. Oct. 9, 2020), in which the U.S. District Court for the Northern District of Alabama denied the plaintiffs' motion for the appointment of a three-judge court. That case, however, is distinguishable from this one. In *Alabama*, the plaintiffs are challenging the Census Bureau's "Residence Rule," which states that the Census Bureau shall count citizens of foreign countries living in the United States "at the U.S. residence where they live and sleep most of the time." *Id.* at *1 (*quoting* Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525-01, 5533 (Feb. 8, 2018)). Although both the plaintiffs and defendants in that case agreed that § 2284(a) is "broad enough" to cover the Plaintiffs' challenge, the intervenors—including numerous states, cities, counties, and the United States Conference of Mayors—opposed the request. *Id.* at *2.

      Unlike the Plaintiffs in this case, the *Alabama* plaintiffs are "challeng[ing] the Census Bureau's practices," rather than the manner of apportionment. *Id.* at *1. The Census Bureau's Residence Rule, which is the sole subject of the *Alabama* plaintiffs' amended complaint, *id.*, 2:18-CV-00772-RDP, ECF 112, ¶¶ 126-143, is an "administrative rule establishing the residency requirements for tabulations in the 2020 Census." 2020 WL 5994259 at *2. The Rule governs and determines who will be counted in the census, and where they will be counted; it does not govern or even refer to the report on the congressional apportionment base that the Department of Commerce

6

must provide to the President under 13 U.S.C. § 141(b), or the statement showing the number of representatives to which each state is entitled that the President is required to submit to Congress under 2 U.S.C. § 2a(a). As the Defendants correctly noted in another lawsuit challenging the July 21 Memorandum, the fact that "the Census Bureau established its own Residence Criteria to determine 'usual residents' . . . . does not bind the Secretary, much less the President"; therefore, a challenge to the Residence Rule does not challenge the constitutionality of the apportionment of congressional districts. *See New York*, 1:20-CV-05770-JMF, ECF 154 at 16 n. 2 (S.D.N.Y. Aug 28, 2020).

Because it focuses on census practices and the data that those practices produce, the amended complaint in *Alabama* has much more in common with the complaints at issue in other cases holding that three-judge courts were not appropriate than it does with the Amended Complaint that Plaintiffs filed in this case. For example, in *Federation for American Immigration Reform v. Klutznick*, 486 F. Supp. 564 (D.D.C. 1980), a three-judge court concluded that the case was "most likely" one for a single district judge because the plaintiffs' challenge—that in conducting the 1980 census, the Census Bureau would "fail to establish the number of illegal aliens in the country"—was to "census practices which will produce data on which the apportionment of House of Representative members to states will be based, not to any state action reapportioning congressional districts." *Id*. at 577; *accord City of Philadelphia v. Klutznick*, 503 F. Supp. 657, 658 (E.D. Pa. 1980) (holding that a three-judge court was not warranted where the complaint alleged that the Census Bureau "grossly undercounted" Philadelphia's population).[2]

---

[2] Curiously, the *Alabama* Court cited to two cases in support of its holding that reached *opposite* conclusions on the same issue: whether the allocation of zero representatives presents a constitutional challenge to apportionment itself. *Compare Adams v. Clinton*, 26 F. Supp. 2d 156, 161 (D.D.C. 1998) (granting request for three-judge panel where plaintiffs were "challenging the existing allocation of zero representatives" to District of Columbia) *with Igartúa v. United States*, 626 F.3d 592, 598 n.6 (1st Cir. 2010) (rejecting argument three-judge panel required where plaintiffs challenging the existing allocation of zero representatives to Puerto Rico) ("*Igartúa IV*"). At a minimum, this demonstrates a greater degree of ambiguity in § 2284(a) than the *Alabama* Court acknowledged. Additionally, insofar as the *Alabama* Court relied on *Igartúa IV* for a narrow reading of § 2284(a), the First Circuit has called the *Igartúa IV* court's reading of the statute into question. In *Igartúa v. Obama*, 842 F.3d 149 (1st Cir. 2016) ("*Igartúa V*"), the court

7

In contrast to the rules and practices at issues in those cases, the July 21 Memorandum does not, on its face or in practice, "purport to regulate the actual conduct of the census." *New York v. Trump*, ___ F. Supp. 3d ____, 2020 WL 5422959 at *24 (S.D.N.Y. Sept. 10, 2020) (per curiam) (observing that the defendants "concede[d] that [the Memorandum] does *not* affect how the Census Bureau is conducting its remaining enumeration operations" (internal citation omitted) (emphasis in original)). Even after July 21, the Census Bureau continued to emphasize that it would enumerate all persons, regardless of citizenship or immigration status. *See, e.g.,* Am. Compl., ECF 35, ¶¶ 111-12; *see also New York*, 2020 WL 5422959, at *1 ("[T]he 2020 census will count illegal aliens according to where they reside.").

Instead, by its explicit terms, the July 21 Memorandum declares that for the "purpose of the reapportionment of Representatives following the 2020 census," the policy of the United States is to exclude undocumented immigrants from the "congressional apportionment base." The July 21 Memorandum does not direct the Secretary of Commerce to create any new practice with respect to the *census*. Rather, it unlawfully and unconstitutionally commands the Secretary to provide two sets of numbers for each state, one of which will represent the state's total population minus the number of undocumented immigrants and will be used for apportionment. The President's statement to Congress setting forth the "whole number of persons in each state" and the "number of representatives to which each state would be entitled" will, under the Memorandum, unlawfully and unconstitutionally use that number. 2 U.S.C. § 2a. Because the July 21 Memorandum directly

---

observed that it "now doubt[s] the correctness" of the decision in *Igartúa IV* not to appoint a three-judge panel in that case, which the court noted had been set forth in a "cryptic comment" in a footnote to that decision. *Id.* at 151, 153. The *Igartúa V* court also stated that "Supreme Court precedent . . . supports a broader view of the statute" than that embodied in *Igartúa IV*. *Id.* at 153. The court reasoned that an "inclusive construction" of § 2284(a)'s language is supported by the "singular importance legislators attributed to apportionment claims" when the statute was amended in 1976, and emphasized that a "narrow reading of 'apportionment' undermines the objective to retain the three-judge court procedure for these 'important' claims." *Id.* at 156 (*quoting* S. Rep. No. 94-204, at 9).

concerns the calculation of the apportionment base, Plaintiffs' Amended Complaint squarely challenges the "constitutionality of the apportionment of congressional districts," rather than any "precursor" to apportionment. *Massachusetts*, 785 F. Supp. at 236; *accord Evenwel v. Perry*, Cause No. A-14-CV-335-LY-CH-MHS, 2014 WL 5780507 (W.D. Tex. Nov. 5, 2014) (noting that a Fifth Circuit judge had convened a three-judge court to preside over a case in which the plaintiffs challenged the use of total population, rather than voter-eligible population, in drawing legislative districts), *aff'd sub nom Evenwel v. Abbott*, 136 S. Ct. 1120 (2016).

In sum, because Plaintiffs are not challenging census methodology, but rather, the actual mechanism for allocating representatives to the states, as well as the mechanism for allocating senators and representatives in the Massachusetts General Court, the first prong of § 2284(a) is met.

### b. Plaintiffs Have Raised a Substantial Federal Question.

This action also satisfies the second prong of the § 2284(a) analysis because it presents a "substantial federal question." The Supreme Court has held that a complaint meets this requirement so long as it is not "wholly insubstantial and frivolous"—a bar that the Amended Complaint easily clears. *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (*quoting Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

In *Shapiro*, a bipartisan group of Maryland residents challenged a redistricting plan on the grounds that it burdened their right to freedom of association under the First Amendment and requested a three-judge court pursuant to § 2284(a). *Id*. at 41-42. Believing that the claim was "not one for which relief can be granted," the district court dismissed the case, and the Fourth Circuit affirmed. *Id*. at 42 (citation omitted). On appeal to the Supreme Court, the petitioners contended that the district court had "no authority to dismiss the case rather than initiate the procedures to convene a three-judge court." *Id*.

9

The Supreme Court analyzed the text of the statute and observed that the amended language of § 2284(b)(1) "merely clarifies that a district judge need not unthinkingly initiate the procedures to convene a three-judge court without first examining the allegations in the complaint." *Id*. at 44. The role of the district judge is to "determine whether the request for three judges is made in a case covered by § 2284(a)—no more, no less." *Id*. In making that determination, a district judge considers *only* whether the claims fail to "raise a substantial federal question for jurisdictional purposes" because they are "wholly insubstantial and frivolous." *Id*. at 45 (*quoting Bell*, 327 U.S. at 682-83). The "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id*. (*quoting Bell*, 327 U.S. at 682)); *see also* 28 U.S.C. § 2284(b)(3) (providing that a single judge "shall not . . . enter judgment on the merits" in any action subject to § 2284(a)).

Here, Plaintiffs' Amended Complaint "easily clears [the] low bar" established by the Supreme Court. *Shapiro*, 577 U.S. at 46. Plaintiffs have marshaled an array of substantive allegations, including support from the text of the Constitution, the writings of the framers, legislative history, and federal case law showing that the July 21 Memorandum's purported exclusion of undocumented immigrants from the congressional apportionment base is unconstitutional and will violate the bar on statistical sampling. *See generally* Am. Compl., ECF 35 ¶¶ 90-162; *see also Fed. for Am. Immigration Reform*, 486 F. Supp. at 576 ("During the first half of this century a variety of proposals were made to exclude aliens from the apportionment base, and it appears to have been generally accepted that such a result would require a constitutional amendment."); *Evenwel*, 136 S. Ct. at 1129 ("[T]he Fourteenth Amendment calls for the apportionment of congressional districts based on total population," not the voting-eligible population.).

That Plaintiffs' claims are neither "legally speaking non-existent" nor "essentially fictitious" is bolstered by the decisions of courts around the country in cases raising similar challenges to the July 21 Memorandum. *See Shapiro*, 577 U.S. at 45 (*quoting Bailey v. Patterson*, 369 U.S. 31, 33 (1962)). Indeed, three-judge courts sitting in the Southern District of New York and the Northern District of California have declared the July 21 Memorandum to be unlawful on most of the grounds alleged in the Amended Complaint. *See City of San Jose v. Trump*, No. 20-CV-05167-RRC-LHK-EMC, 2020 WL 6253433, at *1 (N.D. Cal. Oct. 22, 2020) (per curiam); *New York v. Trump*, ––– F. Supp. 3d ––––, ––––, No. 20-CV-5770 (RCW) (PWH) (JMF), 2020 WL 5422959, at *36 (S.D.N.Y. Sept. 10, 2020), *appeal docketed*, Case No. 20-366 (U.S. Sept. 22, 2020). Further, a three-judge court has been appointed under § 2284(a) in every case challenging the July 21 Memorandum. *See Common Cause v. Trump*, 1:20-cv-02023-CRC-GGK-DLF, ECF No. 33 (D.D.C. Aug. 20, 2020); *New York v. Trump*, 1:20-CV-05770-JMF, ECF No. 68 (S.D.N.Y. Aug. 7, 2020);[3] *City of San Jose v. Trump*/*California v. Trump*, 5:20-CV-05167-LHK-RRC-EMC, 20-CV-05169-LHK-RRC-EMC, ECF No. 56 (N.D. Cal. Aug. 20, 2020);[4] *Useche v. Trump*, 8:20-cv-02225-PX-PAH-ELH, ECF No. 29 (D. Md. Aug. 29, 2020); *see also La Union Del Pueblo Entero v. Trump*, 8:19-CV-02710-PX-PAH-ELH, ECF 104 (D. Md. Aug. 26, 2020 (designating a three-judge panel pursuant to § 2284(a) after plaintiffs amended their complaint to include claims challenging the July 21 Memorandum). Accordingly, the Court appropriately convened a three-judge panel for this action.

---

[3] *New York v. Trump* was consolidated with *North York Immigration Coalition v. Trump*, 1:20-cv-05781-JMF (S.D.N.Y. Jul. 24, 2020).

[4] These cases have been consolidated.

**II. A Three-Judge Court is also Required Because Plaintiffs are Challenging the Defendants' Use of Statistical Sampling in Determining the Population for Purposes of Apportionment Which Violates 13 U.S.C. § 195.**

In the Amended Complaint, Plaintiffs allege that the July 21 Memorandum will require the Commerce Department and the Census Bureau to use statistical sampling in the determination of population for purposes of apportionment, in violation of 13 U.S.C. § 195. *See* Am. Compl., ECF 35, at ¶¶ 255-264. As the *Alabama* court observed, the plaintiffs' assertion of a similar claim in *New York v. Trump* provided an alternative basis for appointing a three-judge court in that case. *Alabama*, 2020 WL 5994259 at *3 n.3 (observing § 195 "allows for plaintiffs to enforce that right in a three-judge court.").

Section 2284(a) provides that a "district court of three judges shall be convened when otherwise required by Act of Congress." Congress has expressly provided that any action brought under 13 U.S.C. § 195 "shall be heard and determined by a district court of three judges in accordance with section 2284 of title 28, United States Code." Departments of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act, 1998, § 209(b), (e)(1), Pub. L. No. 105-119, 111 Stat. 2440, 2481-82 (1997) ("1998 Appropriations Act") (codified at 13 U.S.C. § 141 note). Thus, a three-judge court must be convened in this case because it is "otherwise required by an Act of Congress"—i.e., 13 U.S.C. § 195—within the meaning of 28 U.S.C § 2284(a). *See* Request to the Chief Judge of the U.S. Court of Appeals for the Second Circuit for Appointment of a Three-Judge Panel Pursuant to 28 U.S.C. § 2284(b), *New York*, 1:20-cv-05770-JMF, ECF 68 at *3 (S.D.N.Y. Aug. 7, 2020) (granting request for three-judge panel based, in part, on alleged violation of the sampling statute); *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S.

316, 320 (1999) (noting probable jurisdiction over two appeals from three-judge courts and affirming violation of statistical sampling statute).[5]

In sum, under the plain meaning of 28 U.S.C § 2284(a), a three-judge court must be convened because such a court is required to adjudicate plaintiff's claims under 13 U.S.C. § 195.[6]

### III.  Prudence and Judicial Economy Favor Maintaining the Three-Judge Court Convened in this Action.

When an action falls within Section 2284(a) and requires a three-judge court, "a single judge shall not . . . enter judgment on the merits" of any claim in the action. 28 U.S.C. § 2284(b)(3); *see Shapiro*, 136 S. Ct. at 455. If a single judge does enter judgment on the merits, and it is later found that the "district court erroneously refused to convene a three-judge court" under Section 2284, any "subsequent merits ruling by the appellate panel" on review of the single judge's ruling "is void." *Igartúa V,* 842 F.3d at 152; *accord Kalson v. Paterson*, 542 F.3d 281, 286 (2d Cir. 2008).

Further, the Supreme Court has approved a procedure by which a three-judge court, once convened, can ensure that its ruling will be valid, even if a reviewing court subsequently determines that a three-judge court was not required. *See Swift & Co. v. Wickham*, 382 U.S. 111, 114 n.4 (1965). Under that procedure, the district court judge originally assigned to the case can certify, out of "abundant caution," that "he [or she] individually arrived at the same conclusion that [the three-

---

[5] Although the Court in *Common Cause v. Trump* granted the three-judge court summarily, plaintiffs argued in their Memorandum in Support of Plaintiffs' Application for the Appointment of a Three-Judge Court that the Court had an independent reason to grant a three-judge court based on the alleged violations of 13 U.S.C. § 195. *Common Cause*, ECF 29-1, 1:20-cv-02023-CRC-GGK-DLF at *5-6.

[6] In the 1998 Appropriations Act, as in § 2284, Congress provided that the "action," and not just the specific claim that gives rise to the need for a three-judge court, must be heard by the three-judge court. *See* 28 U.S.C. § 2284(a); 1998 Appropriations Act, § 209(e)(1). Thus, as the Third Circuit has recognized, "[a] straightforward reading of the pertinent language suggests that the entire case, and not just the constitutional claims, must be heard by a three-judge court. . . . because the language of § 2284 itself is broadly applicable to 'actions'—not narrowly to 'claims'—challenging the constitutionality of . . . apportionment." *Page v. Bartels*, 248 F.3d 175, 187-88 (3rd Cir. 2001); *see also Thomas v. Reeves*, 961 F.3d 800, 802 n.2 (5th Cir. 2020) (en banc) (Costa, J., concurring) (observing that "section 2284(a) refers to 'action[s] . . . filed,' not individual claims") (alteration in original) (*quoting* 28 U.S.C. § 2284(a)).

judge court] collectively reached." *Fed. for Am. Immigration Reform*, 486 F. Supp. at 577-78 (citing *Swift & Co. v. Wickham*, 230 F. Supp. 398, 410 (S.D.N.Y. 1964)). This procedure ensures that even if a three-judge court is "mistaken[ly]" convened, its efforts will not be wasted and "an appeal can still be expeditiously taken in the appropriate forum." *Id.*; *accord New York*, 2020 WL 5422959, at *36 n.21 (adopting this procedure); *City of San Jose v. Trump*, 20-CV-05167-RRC-LHK-EMC, ECF 101, Order Granting Plaintiffs' Motion for Partial Summary Judgment and Denying Defendants' Motion to Dismiss at 89-90 n. 17 (same). By contrast, there is no equivalent procedure for a single-judge court to prevent its merits decision from being voided if an appellate court concludes that a three-judge court was required.

Thus, if there were any doubt that a three-judge court is required here under Section 2284, caution and judicial economy would favor maintaining the three-judge court rather than dissolving it.

## CONCLUSION

For all of the foregoing reasons, the convening of a three-judge court in this matter is required.

**HAITIAN-AMERICANS UNITED, INC., BRAZILIAN WORKER CENTER, CHELSEA COLLABORATIVE, INC., CENTRO PRESENTE, GLADYS VEGA, NORIELIZ DEJESUS, ROY AVELLANEDA, DIEUFORT FLEURISSAINT, MARTHA FLORES and JESSICA ARMIJO**

By their attorneys,

*/s/ Patrick M. Curran, Jr.*
Neil V. McKittrick (BBO #551386)
Patrick M. Curran, Jr. (BBO #659322)
Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02110
Tel: (617) 994-5700
Fax: (617) 994-5701
neil.mckittrick@ogletreedeakins.com
patrick.curran@ogletreedeakins.com


Oren Sellstrom (BBO #569045)
Lauren Sampson (BBO #704319)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 988-0609
lsampson@lawyersforcivilrights.org

Dated: October 28, 2020

## **CERTIFICATE OF SERVICE**

      I hereby certify that the within document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Filing.

                                */s/ Patrick M. Curran, Jr.*
                                Patrick M. Curran, Jr.

44751705.1