# EXHIBIT D

1  LATHAM & WATKINS LLP
   Sadik Huseny (Bar No. 224659)
2     sadik.huseny@lw.com
   Steven M. Bauer (Bar No. 135067)
3     steven.bauer@lw.com
   Amit Makker (Bar No. 280747)
4     amit.makker@lw.com
   Shannon D. Lankenau (Bar No. 294263)
5     shannon.lankenau@lw.com
   505 Montgomery Street, Suite 2000
6  San Francisco, CA 94111
   Telephone: 415.391.0600
7  Facsimile: 415.395.8095

8  LATHAM & WATKINS LLP
   Melissa Arbus Sherry (*pro hac vice*)
9     melissa.sherry@lw.com
   Richard P. Bress (*pro hac vice*)
10    rick.bress@lw.com
   Anne W. Robinson (*pro hac vice*)
11    anne.robinson@lw.com
   Tyce R. Walters (*pro hac vice*)
12    tyce.walters@lw.com
   Gemma Donofrio (*pro hac vice*)
13    gemma.donofrio@lw.com
   Christine C. Smith (*pro hac vice pending*)
14    christine.smith@lw.com
   555 Eleventh Street NW, Suite 1000
15 Washington, D.C. 20004
   Telephone: 202.637.2200
16 Facsimile: 202.637.2201

   LAWYERS' COMMITTEE FOR
   CIVIL RIGHTS UNDER LAW
     Kristen Clarke (admitted *pro hac vice*)
       kclarke@lawyerscommittee.org
     Jon M. Greenbaum (Bar No. 166733)
       jgreenbaum@lawyerscommittee.org
     Ezra D. Rosenberg (admitted *pro hac vice*)
       erosenberg@lawyerscommittee.org
     Ajay P. Saini (admitted *pro hac vice*)
       asaini@lawyerscommittee.org
     Maryum Jordan (Bar No. 325447)
       mjordan@lawyerscommittee.org
     Pooja Chaudhuri (Bar No. 314847)
       pchaudhuri@lawyerscommittee.org
   1500 K Street NW, Suite 900
   Washington, D.C. 20005
   Telephone: 202.662.8600
   Facsimile: 202.783.0857

   *Additional counsel and representation
   information listed in signature block*

17

18                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
19                          SAN JOSE DIVISION

20  NATIONAL URBAN LEAGUE, et al.,              CASE NO. 5:20-cv-05799-LHK

                            Plaintiffs,         **PLAINTIFFS' OPPOSITION TO
21                                              DEFENDANTS' MOTION TO
             v.                                 DISMISS**
22
    WILBUR L. ROSS, JR., et al.,
23                                              Date:    December 17, 2020
                            Defendants.         Time:    1:30 p.m.
24                                              Place:   Courtroom 8, 4th Floor, San Jose
                                                Judge:   Hon. Lucy H. Koh
25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1

**TABLE OF CONTENTS**

2

**Page**

I.      INTRODUCTION ............................................................................................1

II.     DISCUSSION ................................................................................................3

     A.      Defendants Offer No Reason For This Court To Reconsider Its Holding
        That Plaintiffs' Claims Do Not Present A Non-Justiciable Political
        Question ............................................................................................3

     B.      Defendants Offer No Reason For This Court To Reconsider Its Holding
        That Plaintiffs Have Standing ............................................................4

           1.      Plaintiffs' Injuries Are Still Not Speculative ...............................4

           2.      Plaintiffs' Injuries Are Still Traceable And Redressable............8

     C.      This Suit Is Ripe............................................................................11

     D.      Defendants Offer No Reason For This Court To Reconsider Its Holding
        That The Replan Is Final Agency Action Reviewable Under the APA ................12

           1.      The Replan Is Still Agency Action ...........................................12

           2.      The Replan Is Still Final ..........................................................14

           3.      The Replan Is Still Not Committed To Agency Discretion By Law .........16

III.    CONCLUSION..............................................................................................17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Appalachian Power Co. v. EPA,*
208 F.3d 1015 (D.C. Cir. 2000) ................................................................................15

*Bennett v. Spear,*
520 U.S. 154 (1997) ...............................................................................................14

*California v. Ross,*
362 F. Supp. 3d 727 (N.D. Cal. 2018) ....................................................................17

*Cath. League for Religious & Civ. Rights v. City of S.F.,*
624 F.3d 1043 (9th Cir. 2010) .................................................................................9

*City of Phila. v. Klutznick,*
503 F. Supp. 663 (E.D. Pa. 1980) ..........................................................................17

*City of San Jose v. Trump,*
No. 20-CV-05167-RRC-LHK-EMC et al., 2020 WL 6253433 (N.D. Cal. Oct.
22, 2020) ..................................................................................................................12

*Dep't of Commerce v. New York,*
139 S. Ct. 2551 (2019) .................................................................................... *passim*

*Dep't of Commerce v. U.S. House of Reps.,*
525 U.S. 316 (1999) ...............................................................................................11

*Dist. of Columbia v. U.S. Dep't of Commerce,*
789 F. Supp. 1179 (D.D.C. 1992) ...........................................................................17

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ...............................................................................................14

*Gonzales v. Gorsuch,*
688 F.2d 1263 (9th Cir. 1982) ..................................................................................9

*Indep. Mining Co. v. Babbitt,*
105 F.3d 502 (9th Cir. 1997) ..................................................................................14

*Kravitz v. Dep't of Commerce,*
336 F. Supp. 3d 545 (D. Md. 2018) ..................................................................15, 17

*Leite v. Crane Co.,*
749 F.3d 1117 (9th Cir. 2014) ..................................................................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ............................................................................................................ 17

*Mach Mining, LLC v. EEOC,*
    575 U.S. 480 (2015) ............................................................................................................ 16

*NAACP v. Bureau of Census,*
    945 F.3d 183 (4th Cir. 2019) ............................................................................................. 13

*Nat'l Urban League v. Ross,*
    977 F.3d 698 (9th Cir. 2020) (*NUL I*) ............................................................................... 10

*Nat'l Urban League v. Ross,*
    977 F.3d 770 (9th Cir. 2020) (*NUL II*) ...................................................................... *passim*

*New York v. U.S. Dep't of Commerce,*
    315 F. Supp. 3d 766 (S.D.N.Y. 2018) ............................................................................... 17

*New York v. U.S. Dep't of Commerce,*
    351 F. Supp. 3d 502 (S.D.N.Y. 2019) ........................................................................... 15, 16

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ............................................................................................................. 13

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.,*
    477 F.3d 668 (9th Cir. 2007) ........................................................................................ 9, 13

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.,*
    465 F.3d 977 (9th Cir. 2006) ............................................................................................. 14

*Patten v. Kiani,*
    No. C 11-2057 LHK PR, 2013 WL 2558041 (N.D. Cal. June 10, 2013) ...................... 1, 3, 12

*Sackett v. EPA,*
    566 U.S. 120 (2012) ........................................................................................................... 14

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ............................................................................................. 8

*Salazar v. King,*
    822 F.3d 61 (2d Cir. 2016) ................................................................................................ 13

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ............................................................................................................... 9

*Tucker v. U.S. Dep't of Commerce,*
    958 F.2d 1411 (7th Cir. 1992) ........................................................................................... 17

*Valentini v. Shinseki,*
    860 F. Supp. 2d 1079 (C.D. Cal. 2012) ............................................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Servs.*,
 139 S. Ct. 361 (2018) ...........................................................................17

*Whitman v. Am. Trucking Ass'ns*,
 531 U.S. 457 (2001) .............................................................................13

*Wild Fish Conservancy v. Jewell*,
 730 F.3d 791 (9th Cir. 2013) ...............................................................15

*Wisconsin v. City of N.Y.*,
 517 U.S. 1 (1996) ...................................................................................4

**STATUTES & RULES**

5 U.S.C. § 701(a)(2) ....................................................................................17

13 U.S.C. § 141(a) ......................................................................................17

13 U.S.C. § 221(a) ......................................................................................16

N.D. Cal. Civ. L.R. 7-9 ...................................................................1, 3, 9, 12

**OTHER AUTHORITIES**

Hansi Lo Wang, *Census 'Anomalies' Could Thwart Trump's Bid to Alter Next
 Electoral College*, NPR (Nov. 19, 2020),
 https://www.npr.org/2020/11/19/936561664/anomalies-found-in-census-
 could-thwart-trumps-bid-to-alter-electoral-college. ...............................2

Memorandum from Allison Plyer, Chair, Census Sci. Advisory Comm. to Steven
 Dillingham, Dir., U.S. Census Bureau, *Recommendations and Comments to
 the Census Bureau* (Nov. 12, 2020),
 https://assets.documentcloud.org/documents/20404686/recommendations-and-
 comments-to-the-census-bureau-from-the-census-scientific-advisory-
 committee-tabled-from-the-fall-2020-meeting-on-september-17-18-2020.pdf.........................7

Mike Schneider, *Census Bureau Denies Fake Data Allegations by Census
 Workers*, APNews (Nov. 10, 2020), https://apnews.com/article/indiana-only-
 on-ap-census-2020-a4f3d96a3118f39774fb495b52b4b10a ......................................6

Mike Schneider, *Census Takers Say They Were Told to Enter False Information*,
 APNews (Nov. 7, 2020), https://apnews.com/article/donald-trump-
 massachusetts-census-2020-98d187302fbcec5e422fa43522d51dfe..........................6

Mike Schneider, *Texts: US Census Manager Told Counters to Use Fake Answers*,
 ABC News (Nov. 24, 2020), https://abcnews.go.com/Politics/wireStory/texts-
 us-census-manager-told-counters-fake-answers-74376974...............................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

Statement from Census Bureau Director Steve Dillingham (Nov. 19, 2020),
https://www.census.gov/newsroom/press-releases/2020/statement-post-
collection-processing.html ........................................................................................2

U.S. Census Bureau, *2020 Census Housing Unit Enumeration Progress by State*
(Oct. 1, 2020 report date),
https://2020census.gov/content/dam/2020census/news/daily-nrfu-rates/nrfu-
rates-report-10-01.pdf ...............................................................................................5

U.S. Census Bureau, *2020 Census Results: Frequently Asked Questions*,
https://www.census.gov/content/dam/Census/newsroom/press-kits/2020/nrfu-
deadline-results-faq.pdf (last visited Nov. 24, 2020)............................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

# I.    INTRODUCTION

Defendants' motion to dismiss is, in fact, a motion for reconsideration. Defendants ask this Court to "revisit" its prior rejection of their "threshold" defenses and to "reevaluate" their prior arguments. Mot. to Dismiss 1, ECF No. 354 (MTD). The reason: "because the Supreme Court found that a judicially-imposed impediment to the Bureau's completion of the census was inappropriate" and because a *dissenting* judge in the Ninth Circuit thought Plaintiffs' claims were non-justiciable. *Id.* Defendants conveniently ignore that the Ninth Circuit *majority*, and a later unanimous Ninth Circuit panel, agreed with this Court; that the Supreme Court decision was a simple order with no opinion and, thus, no findings; and that Defendants did not even bother to raise most of the "threshold" issues on appeal. And they make no attempt to address or fit their motion within the heightened standards of a motion for reconsideration, or to seek leave to file such a motion as required by this Court's rules. *See* N.D. Cal. Civ. L.R. 7-9 (requiring that a motion for leave to file a motion for reconsideration show "a material difference in fact or law," the "emergence of new material facts or a change of law," or a "manifest failure by the Court to consider material facts or dispositive legal arguments," and prohibiting repetition of "any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered"); *Patten v. Kiani*, No. C 11-2057 LHK PR, 2013 WL 2558041, at *2 (N.D. Cal. June 10, 2013) (discussing standard). Defendants provide no reason for this Court to depart from its carefully reasoned prior decisions. There is none.

Defendants' arguments also fail on their own terms. They still fail to identify any case in which a court has held that the political questions doctrine bars a census challenge, or to meaningfully distinguish the many cases that have held the opposite. They still cast no doubt on Plaintiffs' detailed evidence supporting standing. And they offer nothing new in support of their argument that the Replan is not final agency action reviewable under the Administrative Procedure Act (APA).

Defendants' prudential ripeness argument is new, but that is a vice not a virtue. After three months of intense litigation, Defendants claim for the first time that the Court should await the final apportionment numbers before adjudicating Plaintiffs' claims. That is neither necessary

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

nor prudent.  This motion will not be heard until mid-December.  And the current schedule set by this Court extends into 2021.  Dismissing Plaintiffs' claims for a matter of weeks or months would not benefit Defendants or this Court and would harm Plaintiffs and the public at large.

One thing has changed, though Defendants do not acknowledge it: Their arguments regarding the December 31 statutory deadline are now irrelevant.  The statutory deadline featured prominently in Defendants' presentations to this Court, to the Ninth Circuit, and to the Supreme Court.  And Defendants continue to rely on that deadline in their motion to dismiss.  The Ninth Circuit recognized that the Census Bureau may well "miss[] the deadline," and that doing so "would likely not invalidate the tabulation of the total population reported to the President." *Nat'l Urban League v. Ross*, 977 F.3d 770, 781 (9th Cir. 2020) (*NUL II*).  As to whether they will miss the deadline, which is now only a month away, Defendants have been noticeably silent.  But recent reports suggest that the Bureau has encountered some reporting anomalies and that it will not be able to report the final population numbers to the President until January 26, 2021, at the earliest.  Hansi Lo Wang, *Census 'Anomalies' Could Thwart Trump's Bid to Alter Next Electoral College*, NPR (Nov. 19, 2020).[1]  Defendants have not yet publicly confirmed (nor denied) the revised timeline, but even Director Dillingham has acknowledged that during "post-collection processing, certain processing anomalies have been discovered."  Statement from Census Bureau Director Steve Dillingham (Nov. 19, 2020).[2]  If true, Defendants' favorite retort—that they are bound by the statutory deadline and this Court cannot order them to violate it—no longer has purchase (if it ever did).  And regardless, under the Court's current schedule, any relief will come only *after* December 31.

This Court should (again) reject Defendants' threshold arguments and deny Defendants' motion to dismiss.

---

[1] https://www.npr.org/2020/11/19/936561664/anomalies-found-in-census-could-thwart-trumps-bid-to-alter-electoral-college.

[2] https://www.census.gov/newsroom/press-releases/2020/statement-post-collection-processing.html.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

## II.    DISCUSSION

### A.    Defendants Offer No Reason For This Court To Reconsider Its Holding That Plaintiffs' Claims Do Not Present A Non-Justiciable Political Question

Defendants begin by asserting that Plaintiffs' claims are barred by the political question doctrine. This Court already rejected that argument with respect to Plaintiffs' APA claim. PI Order 21-23. And Defendants did not even bother to challenge that holding on appeal to the Ninth Circuit or the Supreme Court. Defendants ignore all of that. They simply recycle and repeat the same rejected and abandoned arguments—which fare no better today, and certainly provide no grounds for reconsideration. *See* N.D. Cal. Civ. L.R. 7-9(b); *Patten*, 2013 WL 2558041, at *2 ("To seek reconsideration of an interlocutory order … Defendants had to comply with Local Rule 7-9(a)" and show "a material difference in fact or law," the "emergence of new material facts or a change of law," or a "manifest failure by the Court to consider material facts").

Defendants still "fail to offer a case that finds that the political question doctrine bars review of decisions regarding the administration of the census." PI Order 21, ECF No. 208. As this Court explained, the "Supreme Court and lower courts have repeatedly rejected the argument that the political question doctrine bars review of census-related decisionmaking." *Id.* at 22 (collecting cases). And "the Supreme Court" recently "rejected Defendants' claim that there is 'no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* at 23 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019)). The standard "is provided by the Census Act, the Constitution, and [the] APA." *Id.* Which is why Defendants "do not" and cannot cite "a case in which the political question doctrine barred judicial review of census-related decisionmaking." *Id.* That should be the end of the matter.

Defendants' continued insistence that this case is somehow different from all that came before is meritless. Defendants contend that all of the other cases entertained challenges to "discrete policy choice[s] that could be juxtaposed against an alternative." MTD 8. The same is true here. Defendants decided to accelerate the census timeline in the Replan; the "alternative" was to adhere to the timeline in the COVID-19 Plan they previously adopted and had been implementing. Defendants also decided to sacrifice accuracy and completeness in order to report

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

out "99%" completion statistics; the "alternative" was to adhere to the detailed metrics adopted in the 2018 Operational Plan (and included in the COVID-19 Plan). There are no abstract questions in this case about how much "time, staff, [or] money" would produce the most accurate count. MTD 9. And nobody is arguing that the Enumeration Clause "demands accuracy at all costs." *Id.* Hyperbole aside, Plaintiffs are merely asking this Court to apply familiar legal standards— whether Defendants engaged in reasoned decisionmaking (under the APA), and whether their decisions bear a "reasonable relationship to the accomplishment of an actual enumeration of the population" (under the Enumeration Clause), *Wisconsin v. City of N.Y.*, 517 U.S. 1, 20 (1996). There is nothing unique or non-justiciable about Plaintiffs' claims—then or now.

**B.** **Defendants Offer No Reason For This Court To Reconsider Its Holding That Plaintiffs Have Standing**

Defendants next argue that Plaintiffs lack standing. This Court already rejected that argument too (PI Order 23-29), and Defendants did not challenge that holding on appeal either. This Court got it right the first time, and nothing has changed to warrant a different result.

**1.** **Plaintiffs' Injuries Are Still Not Speculative**

This Court previously held that Plaintiffs have standing because the Replan (1) will likely cause Plaintiffs to lose federal funds; (2) will likely deprive Plaintiffs of political representation; (3) will degrade the census data on which Plaintiffs rely for necessary functions; and (4) has already required Plaintiffs to divert resources to mitigate the undercounts caused by truncating the 2020 Census. PI Order 23-28. Defendants provide no reason to alter that ruling.

Plaintiffs have exhaustively set out, and provided expert and fact declarations supporting, the various harms that would occur if Defendants cut short the 2020 Census. *See, e.g.*, PI Mot. 26-33, ECF No. 36; PI Reply 3-6, ECF No. 130. These declarations make clear that the Replan's shortened timeline for data collection and processing will cause hard-to-count populations to be undercounted. Plaintiffs, in turn, are local governments with high proportions of hard-to-count groups as residents, organizations with members in such communities, and individuals who live there. And a differential undercount will harm Plaintiffs by causing them to lose their fair share

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

of federal dollars (which turn on census data[3]) and representation in the House (the primary purpose of the census).  Plaintiffs' detailed declarations substantiate each link in that chain.  *See* PI Reply 5-6; *see also* PI Order 23-28.

Defendants do not meaningfully dispute any of that.  Defendants instead argue that Plaintiffs have not adequately alleged a "*differential* undercount" because, as of October 15, the Bureau ultimately "reached completion rates of greater than 99% in every State and in the District of Columbia."  MTD 15.  But the relief granted by this Court is the *only* reason the Bureau reached anything close to "99%."  As of this Court's PI Order, only *four* states had reached 99%.  PI Order 15.  That means that 46 out of 50 states in the nation (plus the District of Columbia) were nowhere close to being adequately counted, one week before the September 30 field operation end date.  On September 30—the date field operations would have ended but for the district court's injunction, and the date by which Associate Director Fontenot promised the Bureau would reach 99% completion in every State (Fontenot Decl. ¶ 65, ECF No. 81-1)— sixteen States and the District of Columbia were still under 99% and seven States were under 98%.  *See* U.S. Census Bureau, *2020 Census Housing Unit Enumeration Progress by State* (Oct. 1, 2020 report date).[4]  So Defendants' "standing" argument turns almost entirely on their assertion that the relief already ordered by this Court effectively mitigated Plaintiffs' injuries—and rendered this case moot.

That argument is flawed for several reasons.  *First*, as detailed in the Second Amended Complaint, the statistics on which Defendants rely are unreliable.  *See* SAC ¶¶ 27-40, 369-416, ECF No. 352.  Just two weeks ago, the Associated Press reported that twelve census takers were told by supervisors to falsify data so that Defendants could meet their own shortened deadline to end field operations.  *See* Mike Schneider, *Census Bureau Denies Fake Data Allegations by*

---

[3]  *See, e.g.*, PI Reply Ex. 16, ECF No. 131-1, Cong. Research Serv., *Community Development Block Grants and Related Programs: A Primer* 9-10 (Apr. 30, 2014) (detailing one such funding formula).

[4]  https://2020census.gov/content/dam/2020census/news/daily-nrfu-rates/nrfu-rates-report-10-01.pdf.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*Census Workers,* APNews (Nov. 10, 2020).[5]  Defendants may insist those claims are false or, if true, only examples of isolated bad actors.  But recent reports suggest otherwise: Today, for example, the Associated Press published text messages from an Alabama supervisor—sent just a week before the Supreme Court's stay order—giving detailed instructions as to how enumerators were to falsify data, and providing "the 15 steps she said would allow the census takers to mark in their bureau-issued iPhones that only one person lived in a home without interviewing anyone about the household's demographic makeup or the number of people living there."  Mike Schneider, *Texts: US Census Manager Told Counters To Use Fake Answers,* ABC News (Nov. 24, 2020).[6]  The supervisor also "recommended performing the steps two to three hours after trying to interview members of a household to avoid arousing suspicions from higher-ups who could track where census takers had been through their iPhones."  *Id.*  How widespread any falsification was remains a matter for discovery; Defendants provide no reason to dismiss this suit at the pleading stage.

*Second*, even if Defendants' state-by-state metrics could withstand scrutiny, they would not undermine Plaintiffs' standing.  That is because, as Defendants acknowledge, Plaintiffs' injuries are premised in large part on "a *differential* undercount."  MTD 16.  The limited data released by Defendants strongly suggests that a differential undercount within states has occurred.  SAC ¶ 368.  For example, a September 28 report showed that the tribal area of Window Rock, Arizona, which the Bureau designates as the capital of Plaintiff Navajo Nation, was 20% below targets.  *See* SAC ¶ 27; ECF No. 233-2 at 2; *see also* ECF No. 330-1 at 2-3 (¶¶ 4-8) (tribal area, with a 14% self-response rate, was told by Bureau officials that it had a "completion percentage" of 101.31%, when it was "actually only 88.01%").  And as the Bureau's accompanying presentation to the Secretary explained, continuing field work was necessary to "improve enumeration of lagging sub-state areas, such as tribal areas, rural areas, and hard-to-count

---

[5]  https://apnews.com/article/indiana-only-on-ap-census-2020-a4f3d96a3118f39774fb495b52b4b10a; *see also* Mike Schneider, *Census Takers Say They Were Told to Enter False Information*, APNews (Nov. 7, 2020), https://apnews.com/article/donald-trump-massachusetts-census-2020-98d187302fbcec5e422fa43522d51dfe.

[6] https://abcnews.go.com/Politics/wireStory/texts-us-census-manager-told-counters-fake-answers-74376974.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

communities." ECF No. 233 at 148. Defendants have offered no reason to believe that the situation changed dramatically between September 28 and October 15.

*Third*, Defendants largely ignore the harms caused by severely curtailed data-processing activities. SAC ¶¶ 417-22. That is remarkable, given that the Bureau itself warned that "[a]ny effort to concatenate or eliminate processing and review steps to reduce the timeframes will significantly reduce the accuracy of the apportionment counts and the redistricting data products." PI Order 58 (quoting DOC_8337). Experts agree. As Dr. Louis, the former chief data scientist for the Bureau explained, "[i]nevitably, streamlining will degrade quality, because the systems and procedures that have been developed and tested over the decade are designed to be both necessary and sufficient." Louis Decl. ¶ 32, ECF No. 36-4. And Dr. Hillygus explained that "compressed time frame for Quality Control and data processing" will lead to an "even larger overcount of the White population." Hillygus Decl. ¶ 20, ECF No. 36-3. To take just one example, college students tend to be overcounted by potentially being counted both at their university address and at their parents' homes, *id.* ¶ 23, and this has to be fixed in the data-processing phase through de-duplication. SAC ¶¶ 269-71. The Bureau's own Census Scientific Advisory Committee (CSAC) recently echoed the same concern: that "due to pandemic conditions … adequate de-duplication procedures for college students, retirees, and others require additional time, not less." Memorandum from Allison Plyer, Chair, Census Sci. Advisory Comm. to Steven Dillingham, Dir., U.S. Census Bureau, *Recommendations and Comments to the Census Bureau* at 3 (Nov. 12, 2020).[7] Failure to provide that time will lead to overcounts of these groups—which, in turn, will lead to relative undercounts of the hard-to-count groups that make up a disproportionate share of Plaintiffs' residents and members. *See* Louis Decl. ¶¶ 30-34.

*Fourth*, as Defendants recognize (MTD 17), the purported completion rates have nothing to do with this Court's separate ruling that the "degradation of data" is an "informational injury analogous to those that have supported Article III standing." PI Order 26-27 (collecting cases).

---

[7] https://assets.documentcloud.org/documents/20404686/recommendations-and-comments-to-the-census-bureau-from-the-census-scientific-advisory-committee-tabled-from-the-fall-2020-meeting-on-september-17-18-2020.pdf.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

But Defendants (again) simply ignore this Court's holding and the actual allegations in this case—which do not challenge just "*any*" inaccuracy nor "every detail of census operations that could conceivably affect accuracy." MTD 17 (emphasis added). The unrebutted evidence in this case shows that the "truncation of the time for field operations and data curation, especially in the midst of the COVID-19 pandemic, will *severely* compromise the quality of the census data," Louis Decl. ¶ 44 (emphasis added), will have "grave and material consequences for the 2020 Census," Thompson Decl. ¶ 5, ECF No. 36-2, and will, as the Bureau itself recognized, "significantly reduce the accuracy" of the census data on which Plaintiffs rely, PI Order 58 (quoting DOC_8337).

At an absolute minimum, Defendants have not made the kind of showing necessary to justify dismissal at the pleading stage. To the extent that Defendants are presenting a "facial attack" on this Court's jurisdiction, the Court would resolve it "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Defendants' arguments cannot possibly succeed under that standard. *See, e.g.*, SAC ¶¶ 27-40, 423-59. And to the extent that Defendants seek to mount a "factual attack" by "disput[ing] the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," Defendants' cry of "speculative" (MTD 17) cannot defeat Plaintiffs' highly detailed allegations, expert declarations, and prior statements by Bureau officials. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Moreover, the Ninth Circuit has cautioned that "jurisdictional finding of genuinely disputed facts is inappropriate" where, as here, "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Id.* (citation and alteration omitted). Although Plaintiffs look forward to demonstrating in detail the many flaws in Defendants' claims of completeness and accuracy, this Court need not resolve these issues today.

### 2. Plaintiffs' Injuries Are Still Traceable And Redressable

Defendants' traceability and redressability arguments are familiar too. Defendants

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1    contend that the statutory deadline is the real cause of Plaintiffs' harms, and this Court cannot

2    provide a remedy. That argument was flawed then and is even more untenable now. *See* N.D.

3    Cal. Civ. L.R. 7-9(b).

4         As Plaintiffs previously explained, whether the statutory deadline compelled or justified

5    Defendants' actions goes to the merits, not to Plaintiffs' Article III standing. *See Cath. League*

6    *for Religious & Civ. Rights v. City of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010) ("Nor can

7    standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used

8    to disguise merits analysis …."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998);

9    *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680-81 (9th Cir. 2007); *Gonzales*

10   *v. Gorsuch*, 688 F.2d 1263, 1267-68 (9th Cir. 1982). Defendants rely heavily on "three"

11   "decisions" by the Supreme Court which, they say, "illustrate that the deadlines Congress has

12   established to govern completion of the census and transmission of the results to Congress cannot

13   be overridden by a judicial remedy." MTD 12. But none of the three decisions say anything

14   about standing. In fact, none say anything at all. They are all orders granting stays without any

15   opinion or reasoning.

16        Defendants also rely on the Ninth Circuit's decision in this case, but that decision too says

17   nothing about standing. As noted above, Defendants did not even challenge standing on appeal.

18   The "separation of powers" language Defendants quote (MTD 12) comes from a discussion of the

19   "balancing of the equities" for the purpose of granting a stay of preliminary relief—at a time

20   when the December 31 deadline was still "three months away." *NUL II*, 977 F.3d at 781. And

21   the Ninth Circuit expressly recognized that "[i]f the Bureau meets the December 31 date by using

22   procedures that violate any accuracy requirement embedded in the Enumeration Clause, or

23   proceeds in an arbitrary and capricious manner," the Court *could* afford Plaintiffs a remedy

24   because "existing data can be reprocessed more easily than data collection can be restarted." *Id*.

25   The Ninth Circuit granted the stay as a matter of "judicial restraint" only "while the ability to

26   meet or extend the deadline, and any resulting injury, is still speculative." *Id*. The statutory

27   deadline does not render this Court powerless to grant Plaintiffs relief.

28        But more to the point, Defendants' arguments are dated. They do not take into account

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

two, critical intervening circumstances: (1) Defendants are going to miss the December 31 deadline, and (2) this Court is not going to grant relief until after December 31.

*First*, as the Ninth Circuit suspected, Defendants are going to miss the December 31 deadline regardless. That was preordained from the beginning and only became more certain over time. "The evidence in the administrative record uniformly showed that no matter when field operations end—whether September 30 under the Replan or October 31 under the COVID-19 Plan—the Bureau will be unable to deliver an accurate census by December 31, 2020." *Nat'l Urban League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020) (*NUL I*); App. 1-6 (compilation of key record cites). Once the Replan issued, Defendants maintained that in order to meet the statutory deadline, they would need to be out of the field no later than October 1. *See* App. 6-9. They later revised that drop-dead date to October 5, 2020. *See id.* at 10-11; SAC ¶ 419. When Defendants remained in the field until October 15, any remote chance of meeting the December 31 deadline disappeared. SAC ¶ 420.

Defendants don't deny this reality, and carefully avoid saying they will meet the December 31 deadline. *See, e.g.*, U.S. Census Bureau, *2020 Census Results: Frequently Asked Questions* ("The Census Bureau is working hard to … deliver complete and accurate state population counts *as close to the December 31, 2020 statutory deadline as possible*." (emphasis added)).[8] To the contrary, recent reports suggest that the Bureau's internal deadline for reporting final population numbers to the President is now January 26, 2021—*at the earliest*. *See* Hansi Lo Wang, *Census 'Anomalies' Could Thwart Trump's Bid to Alter Next Electoral College*, NPR (Nov. 19, 2020).[9] That alone destroys the only redressability (or traceability) argument Defendants make.

*Second*, the scheduling order in this case means that any remedy will not come until after the December 31 deadline has passed. The order issued after Defendants' motion to dismiss was filed, so perhaps they will now withdraw their redressability argument. But if they do not, their

---

[8] https://www.census.gov/content/dam/Census/newsroom/press-kits/2020/nrfu-deadline-results-faq.pdf (last visited Nov. 24, 2020).

[9] https://www.npr.org/2020/11/19/936561664/anomalies-found-in-census-could-thwart-trumps-bid-to-alter-electoral-college.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

own arguments are more than sufficient to defeat any suggestion that later relief is unavailable. *See* Joint Case Mgmt. Statement at 4, ECF No. 356 (acknowledging "lack of disagreement" that "post-census relief, if warranted, is available"); *see also* MTD 19.

## C. This Suit Is Ripe

Defendants also argue that this suit is not ripe "for adjudication before the 2020 Census has been completed and its results reported." MTD 17. That argument, unlike the others, is new. Which is itself telling: After several months of intense litigation, as well as decisions by the Ninth Circuit and the Supreme Court, Defendants have suddenly concluded that the claims in this case are not ripe for adjudication. Defendants are wrong.

As Defendants acknowledge (at 18), their argument about constitutional ripeness rests on the premise that there is no injury-in-fact—and fails for the same reasons. The only distinct argument is one of prudential ripeness. Given the current schedule, Defendants are essentially asking the Court to dismiss this case in December only to have it refiled a month or so later. The two reasons Defendants offer for this perverse result provide no support.

Defendants first contend this case is not "fit for judicial decision" because "the existence or extent of any purported undercount" is "unknowable until, at the earliest apportionment data have been finalized and published." MTD 18. But the Supreme Court has already rejected the argument that plaintiffs must wait until after the census has been completed to consider such suits, holding that a challenge to the Bureau's plans to conduct the 2000 Census was "ripe for review" even though filed two years before that census concluded. *See Dep't of Commerce v. U.S. House of Reps.*, 525 U.S. 316, 329 (1999). Similarly, the Supreme Court adjudicated the citizenship question case without waiting for the harms—as set forth in expert testimony and the Bureau's own past statements regarding the likely differential undercounts that would be caused by the Secretary's decision—to be realized. *See New York*, 139 S. Ct. at 2565-66. And a three-judge panel of this Court recently rejected similar attempts to argue that the harm from the challenged Presidential Memorandum was unrealized and not yet certain, holding that it was enough that there was "a substantial risk that Plaintiffs will suffer the apportionment and census degradation injuries," particularly given "the failure of Defendants to contest the Plaintiffs' declarations" on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

those injuries. *City of San Jose v. Trump*, No. 20-CV-05167-RRC-LHK-EMC et al., 2020 WL 6253433, at \*22 (N.D. Cal. Oct. 22, 2020). This case is no different.

Defendants are also wrong to suggest that there is "no conceivable hardship" from "withholding consideration" until final apportionment numbers have been released. MTD 18. True, the Court could "provide relief after the fact by, for example, ordering some appropriate measure of corrective data processing." *Id.* at 19. The current scheduling order accounts for that possibility. But the timing still matters. Corrective data processing should be done as soon as possible in order to provide states, localities, and other entities with critical census data for apportionment, redistricting, and all the many other needs that governments and businesses have for that data. And any limited additional data collection should be done as close in time as possible to April 1, 2020. Even under the current schedule set by this Court, a hearing on summary judgment will not occur until February 18, and any trial will not occur until March 11. By that time, the results of the count will presumably have been revealed, and an order to redo portions of data processing or engage in targeted fixes of data collection will be urgent but not yet too late. Defendants have no basis to assert that the proper remedy is instead to dismiss this suit entirely.

### D. Defendants Offer No Reason For This Court To Reconsider Its Holding That The Replan Is Final Agency Action Reviewable Under the APA

This Court and the Ninth Circuit have already held that the Replan is final agency action subject to judicial review. *See* PI Order 29-42; AR Order 14-17, ECF No. 96; *NUL II*, 977 F.3d at 776-77. Defendants have offered no persuasive reason for the Court to reconsider its prior decisions, and have certainly pointed to no material change in fact or law (or manifest failure by this Court to consider material facts) that would warrant such a reversal. *Patten*, 2013 WL 2558041, at \*2 (discussing requirements of N.D. Cal. Civ. L.R. 7-9(b)).

#### 1. The Replan Is Still Agency Action

As this Court previously recognized, "[t]he bite in the phrase 'final action' … is not in the word 'action,' which is meant to cover comprehensively every manner in which an agency may exercise its power." PI Order 29 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

(2001) (ellipsis in original)). Defendants nevertheless continue to insist (at 20-22) that Plaintiffs' claims are barred by *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (*SUWA*), which held that "a claim under § 706(1) can proceed only where … an agency failed to take a *discrete* agency action that it is *required to take*." As Plaintiffs have explained, *SUWA*'s "discreteness" requirement has no application to this case because Plaintiffs have not brought a claim under § 706(1) to compel agency action unlawfully withheld.[10]

But even if *SUWA*'s "discreteness" requirement were applicable, "Plaintiffs here challenge a circumscribed, discrete agency action": the Bureau's decision to cut in half the time for data collection and data processing through the Replan. PI Order 32. Defendants repeat their refrain that this challenge is a "broad programmatic attack" masquerading as a discrete challenge to the Replan's deadlines. MTD 20. But Plaintiffs' statements, this Court's holdings, and Defendants' *own actions* belie that characterization. Indeed, as the Ninth Circuit recognized, the Bureau has consistently "treated the Replan as a single proposal, presented 'to the Secretary in a single slide deck' and announced in a single press release," *NUL II*, 977 F.3d at 776—or, in other words, "as a circumscribed, discrete agency action," PI Order 31.

Defendants rehash their discredited analogy to *NAACP v. Bureau of Census*, 945 F.3d 183 (4th Cir. 2019). MTD 21. But that comparison has been rejected three times over. "Unlike in *NAACP*," "Plaintiffs challenge the decisionmaking process that went into the decision in the Replan to greatly accelerate the census process over the COVID-19 Plan, not specific 'design choices' within that plan." *NUL II*, 977 F.3d at 776 (quoting *NAACP*, 945 F.3d at 188); *see* PI Order 30-31; AR Order 16-17.

Defendants also resurrect their argument that granting relief requires "'hands-on' management of the Census Bureau's operations." MTD 21 (quoting *NAACP*, 945 F.3d at 191). But this Court's experience demonstrates otherwise. The Court has not become mired in the day-to-day management of the Census Bureau, and there is no reason to believe that will change now. To the extent the Court has had to engage in any "monitoring of the Bureau's efforts" (*id.*), that

---

[10] *See Salazar v. King*, 822 F.3d 61, 82 n.13 (2d Cir. 2016); *Valentini v. Shinseki*, 860 F. Supp. 2d 1079, 1096-97 (C.D. Cal. 2012) (citing *Nw. Envtl. Def. Ctr.*, 477 F.3d at 681 n.10).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

was a direct result of Defendants' persistent refusal to follow this Court's orders.  *See* Clarification Order at 4-10, ECF No. 288; Pls.' Mot. to Compel at 2-6, ECF No. 265.  Defendants fundamentally misunderstand the difference between "reaching into an agency of the executive branch and dictating the details of its internal operations," MTD 21 (quoting *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 506 (9th Cir. 1997)), and ensuring that Defendants are following the Bureau's *own* COVID-19 Plan.

Defendants claim that the Supreme Court's stay of the PI Order "suggests" that such relief is "unavailab[le] as a matter of law."  MTD 21.  But as this Court has recognized, "the Supreme Court opinion was not actually an opinion, there were no reasons stated."  H'rg Tr. 14:1-2 (Nov. 13, 2020).  That unexplained order provides no reason to revisit the well-reasoned holdings of this Court and the Ninth Circuit that the Replan is "agency action."

## 2.  The Replan Is Still Final

Two conditions must be met for agency action to be final.  PI Order 32.  First, "the action 'must mark the consummation of the agency's decisionmaking process'" and, second, "the action 'must be one by which "rights or obligations have been determined," or from which legal consequences will flow.'"  *Id.* at 32-33 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (applying this test in a census case).  As this Court and the Ninth Circuit already held, the Replan is *final* agency action because both conditions are met here.  *See NUL II*, 977 F.3d at 776-77; PI Order 32-41; AR Order 14-16.

*First*, the Replan marks the consummation of the Bureau's decisionmaking process.  The Bureau's highest official, the Secretary, adopted the Replan, and his decision was "not subject to further agency review."  *Sackett v. EPA*, 566 U.S. 120, 127 (2012); *see also Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 984-85 (9th Cir. 2006).

Here too, Defendants' motion to dismiss covers no new ground.  Defendants once again argue that the Replan is not final because, "in *Franklin*, the Supreme Court held that the Secretary's transmission of a final census report to the President" was "not final agency action."  MTD 22.  Putting aside the fact that Defendants abandoned their *Franklin* argument before the Ninth Circuit and the Supreme Court, *Franklin* does not aid Defendants.  As this Court previously

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1    held, that decision actually "underscores why the Replan constitutes final agency action." PI

2    Order 40. Unlike the report in *Franklin*, "[t]he Replan is neither a 'tentative recommendation'

3    nor a decision that will be reviewed by a higher official." *Id*. (citation omitted). And the Replan

4    "has 'direct consequences for the apportionment'" because it "determines when data collection

5    will end." *Id.* (citation omitted). Defendants' argument that the "Bureau's antecedent operations"

6    preceding the transmission of the Secretary's report are not reviewable (at 22) stands in stark

7    contrast to the Department of Justice's concession just last year that the addition of a citizenship

8    question to the census constituted final agency action. *See New York v. U.S. Dep't of Commerce*,

9    351 F. Supp. 3d 502, 645 (S.D.N.Y. 2019); *Kravitz v. Dep't of Commerce*, 336 F. Supp. 3d 545,

10    566 n.13 (D. Md. 2018); *see also New York*, 139 S. Ct. at 2567-76 (reviewing this decision under

11    the APA). And Defendants' reliance (at 22) on the Ninth Circuit's holding that "day-to-day

12    operations that merely implement operational plans" are not reviewable final agency actions, *Wild*

13    *Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013), only underscores the obvious: The

14    operational plans that dictate those day-to-day operations, such as the Replan, *are* reviewable.

15       Defendants further suggest that the Replan is not "final" because, in an attempt to

16    circumvent this Court's orders, Defendants changed the Replan's deadlines. But "[t]he fact that a

17    law may be altered in the future has nothing to do with whether it is subject to judicial review at

18    the moment." *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). And

19    the changes made to those deadlines did nothing to alter the fact that the Replan substantially

20    shortened the time provided by the COVID-19 Plan—which would have extended data processing

21    through April 2021. The accelerated timeline is and has always been the gravamen of Plaintiffs'

22    challenge and, unless Defendants wish to tell the Court otherwise, that accelerated timeline

23    remains in effect.

24       *Second,* legal consequences and obligations flow from the Replan. Defendants offer no

25    persuasive rejoinder to the Ninth Circuit's conclusion that "significant legal consequences will

26    flow from the timing and deadlines of the census, including consequences to political

27    representation, federal and state funding, and degradation of census data," all of which "echo the

28    consequences faced by the Plaintiffs in [*New York*]." *NUL II*, 977 F.3d at 777; *see also* PI Order

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

35-39.  Defendants repeat their argument that the Replan does not affect anyone's "rights" and "does not require anyone to do, or not do, anything."  MTD 22.  But as this Court has explained time and again, that is simply not true.  Not only does the Replan impose significant legal consequences for political representation and federal funding, it also set the operative deadline by which U.S. residents must respond to the census or face financial penalties for failing to do so.  *See* PI Order 37-38; *see also* 13 U.S.C. § 221(a); *New York*, 139 S. Ct. at 2565-66 (noting that the government relied on private individuals' "legal duty to respond to the census" in arguing against standing).  Defendants have never explained how a policy that determines a person's exposure to financial sanctions could be non-final.

Defendants note that "the data collection phase of the 2020 Census has already concluded."  MTD 22.  But final agency action does not become non-final simply because the legal obligations it imposes are now enforceable.  In any event, the consequences to political representation, funding, and degradation of the census data do not flow from data collection alone, but from data processing as well.  As Census Bureau officials themselves have recognized, "[a]ny effort to concatenate or eliminate processing and review steps to reduce the timeframes will significantly reduce the accuracy of the apportionment counts and the redistricting data products."  PI Order 58 (quoting DOC_8337); *see also supra* at 7.[11]

### 3.  The Replan Is Still Not Committed To Agency Discretion By Law

The APA creates a "strong presumption favoring judicial review of administrative action."  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 489 (2015).  The APA provides one narrow exception to that presumption for actions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), which applies only when Congress has explicitly prohibited review or in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Weyerhaeuser Co. v. U.S.*

---

[11] Defendants do not meaningfully challenge this Court's conclusions that the Replan was no mere "'preliminary step' toward deciding the Census schedule," PI Order 34; that the "termination of data collection is practically irreversible," *id.* at 35; or that the Replan would have "bar[red] people who seek to participate in the Census—such as governmental Plaintiffs' constituents and organizational Plaintiffs' members—from participating after September 30, 2020," *id.* at 36-37.

*Fish & Wildlife Servs.*, 139 S. Ct. 361, 370 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). As this Court and numerous other courts have recognized, that narrow exception does not apply here. *See* PI Order 41-42; AR Order 17; *see also California v. Ross*, 362 F. Supp. 3d 727, 743-46 (N.D. Cal. 2018); *New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 794-99 (S.D.N.Y. 2018); *Kravitz*, 336 F. Supp. 3d at 567 & n.14 (citing cases); *Dist. of Columbia v. U.S. Dep't of Commerce*, 789 F. Supp. 1179, 1188 n.16 (D.D.C. 1992).

The Supreme Court's recent decision in the citizenship question case makes clear that "[t]he taking of the census is not one of those areas traditionally committed to agency discretion." *New York*, 139 S. Ct. at 2568. Nor is the statute "drawn so that it furnishes no meaningful standard" of review. *Id.* That is, despite the "broad authority [conferred] on the Secretary under 13 U.S.C. § 141(a), the Act does "not leave his discretion unbounded" and "constrains" his authority in important respects." *New York*, 139 S. Ct. at 2568. Defendants' insistence that the same statutory provisions are not at issue here (MTD 24), just continues to ignore the Supreme Court's reliance on the directly applicable "duty to conduct a census that is accurate and that fairly accounts for the crucial representational rights that depend on the census and the apportionment." PI Order 48 (quoting *New York*, 139 S. Ct. at 2568-69).[12]

## III. CONCLUSION

For all of the foregoing reasons, this Court should deny Defendants' motion to dismiss.

---

[12] Defendants' reliance (at 24) on two cases decided before controlling Supreme Court decisions, *Tucker v. U.S. Dep't of Commerce*, 958 F.2d 1411 (7th Cir. 1992) and *City of Philadelphia v. Klutznick*, 503 F. Supp. 663 (E.D. Pa. 1980), only demonstrates that Defendants' position does not square with controlling law. *See California*, 362 F. Supp. 3d at 744-45 (discussing *Tucker*).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated: November 24, 2020

LATHAM & WATKINS LLP

By: /s/ Melissa Arbus Sherry
    Melissa Arbus Sherry

Steven M. Bauer (Bar No. 135067)
steven.bauer@lw.com
Sadik Huseny (Bar No. 224659)
sadik.huseny@lw.com
Amit Makker (Bar No. 280747)
amit.makker@lw.com
Shannon D. Lankenau (Bar. No. 294263)
shannon.lankenau@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600
Facsimile: 415.395.8095

Richard P. Bress (admitted *pro hac vice*)
rick.bress@lw.com
Melissa Arbus Sherry (admitted *pro hac vice*)
melissa.sherry@lw.com
Anne W. Robinson (admitted *pro hac vice*)
anne.robinson@lw.com
Tyce R. Walters (admitted *pro hac vice*)
tyce.walters@lw.com
Gemma Donofrio (admitted *pro hac vice*)
gemma.donofrio@lw.com
Christine C. Smith (*pro hac vice* pending)
christine.smith@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
Facsimile: 202.637.2201

*Attorneys for Plaintiffs National Urban League;
League of Women Voters; Black Alliance for Just
Immigration; Harris County, Texas; King
County, Washington; City of San Jose,
California; Rodney Ellis; Adrian Garcia; and the
NAACP*

Dated: November 24, 2020

By: /s/ Jon M. Greenbaum
Kristen Clarke (*pro hac vice*)
kclarke@lawyerscommittee.org
Jon M. Greenbaum (Bar No. 166733)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (*pro hac vice*)
erosenberg@lawyerscommittee.org
Ajay Saini (*pro hac vice*)
asaini@lawyerscommitee.org

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1    Maryum Jordan (Bar No. 325447)
     mjordan@lawyerscommittee.org
2    Pooja Chaudhuri (Bar No. 314847)
     pchaudhuri@lawyerscommittee.org
3    **LAWYERS' COMMITTEE FOR CIVIL**
     **RIGHTS UNDER LAW**
4    1500 K Street NW, Suite 900
     Washington, DC 20005
5    Telephone: 202.662.8600
     Facsimile: 202.783.0857
6

7    *Attorneys for Plaintiffs National Urban League;*
     *City of San Jose, California; Harris County,*
8    *Texas; League of Women Voters; King County,*
     *Washington; Black Alliance for Just*
9    *Immigration; Rodney Ellis; Adrian Garcia; the*
     *NAACP; and Navajo Nation*
10

11   Wendy R. Weiser (*pro hac vice*)
     weiserw@brennan.law.nyu.edu
12   Thomas P. Wolf (*pro hac vice*)
     wolft@brennan.law.nyu.edu
13   Kelly M. Percival (*pro hac vice*)
     percivalk@brennan.law.nyu.edu
14   **BRENNAN CENTER FOR JUSTICE**
     120 Broadway, Suite 1750
15   New York, NY 10271
     Telephone: 646.292.8310
16   Facsimile: 212.463.7308

17   *Attorneys for Plaintiffs National Urban League;*
     *City of San Jose, California; Harris County,*
18   *Texas; League of Women Voters; King County,*
     *Washington; Black Alliance for Just*
19   *Immigration; Rodney Ellis; Adrian Garcia; the*
     *NAACP; and Navajo Nation*
20

21   Mark Rosenbaum (Bar No. 59940)
     mrosenbaum@publiccounsel.org
22   **PUBLIC COUNSEL**
     610 South Ardmore Avenue
23   Los Angeles, California 90005
     Telephone: 213.385.2977
24   Facsimile: 213.385.9089

25   *Attorneys for Plaintiff City of San Jose*

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

| | |
|---|---|
| 1 | Doreen McPaul, Attorney General<br>dmcpaul@nndoj.org |
| 2 | Jason Searle (*pro hac vice*)<br>jasearle@nndoj.org |
| 3 | **NAVAJO NATION DEPARTMENT OF JUSTICE** |
| 4 | P.O. Box 2010<br>Window Rock, AZ 86515 |
| 5 | Telephone: (928) 871-6345 |
| 6 | *Attorneys for Navajo Nation* |
| 7 | |
| 8 | Dated: November 24, 2020   By: /s/ Danielle Goldstein<br>Michael N. Feuer (Bar No. 111529) |
| 9 | mike.feuer@lacity.org<br>Kathleen Kenealy (Bar No. 212289) |
| 10 | kathleen.kenealy@lacity.org<br>Danielle Goldstein (Bar No. 257486) |
| 11 | danielle.goldstein@lacity.org<br>Michael Dundas (Bar No. 226930) |
| 12 | mike.dundas@lacity.org<br>**CITY ATTORNEY FOR THE CITY OF LOS** |
| 13 | **ANGELES**<br>200 N. Main Street, 8th Floor |
| 14 | Los Angeles, CA 90012<br>Telephone: 213.473.3231 |
| 15 | Facsimile: 213.978.8312 |
| 16 | *Attorneys for Plaintiff City of Los Angeles* |
| 17 | Dated: November 24, 2020   By: /s/ Michael Mutalipassi |
| 18 | Christopher A. Callihan (Bar No. 203010)<br>legalwebmail@ci.salinas.ca.us |
| 19 | Michael Mutalipassi (Bar No. 274858)<br>michaelmu@ci.salinas.ca.us |
| 20 | **CITY OF SALINAS**<br>200 Lincoln Avenue |
| 21 | Salinas, CA 93901<br>Telephone: 831.758.7256 |
| 22 | Facsimile: 831.758.7257 |
| 23 | *Attorneys for Plaintiff City of Salinas* |
| 24 | Dated: November 24, 2020   By: /s/ Rafey S. Balabanian |
| 25 | Rafey S. Balabanian (Bar No. 315962)<br>rbalabanian@edelson.com |
| 26 | Lily E. Hough (Bar No. 315277)<br>lhough@edelson.com |
| 27 | **EDELSON P.C.**<br>123 Townsend Street, Suite 100 |
| 28 | San Francisco, CA 94107 |

Telephone: 415.212.9300
Facsimile: 415.373.9435

Rebecca Hirsch (*pro hac vice*)
rebecca.hirsch2@cityofchicago.org
**CORPORATION COUNSEL FOR THE
CITY OF CHICAGO**
Mark A. Flessner
Stephen J. Kane
121 N. LaSalle Street, Room 600
Chicago, IL 60602
Telephone: (312) 744-8143
Facsimile: (312) 744-5185

*Attorneys for Plaintiff City of Chicago*

Dated: November 24, 2020        By: /s/ Donald R. Pongrace
                                Donald R. Pongrace (*pro hac vice*)
                                dpongrace@akingump.com
                                Merrill C. Godfrey (Bar No. 200437)
                                mgodfrey@akingump.com
                                **AKIN GUMP STRAUSS HAUER & FELD
                                LLP**
                                2001 K St., N.W.
                                Washington, D.C. 20006
                                Telephone: (202) 887-4000
                                Facsimile: 202-887-4288

                                *Attorneys for Plaintiff Gila River Indian
                                Community*

Dated: November 24, 2020        By: /s/ David I. Holtzman
                                David I. Holtzman (Bar No. 299287)
                                David.Holtzman@hklaw.com
                                **HOLLAND & KNIGHT LLP**
                                Daniel P. Kappes
                                Jacqueline N. Harvey
                                50 California Street, 28th Floor
                                San Francisco, CA 94111
                                Telephone: (415) 743-6970
                                Fax: (415) 743-6910

                                *Attorneys for Plaintiff County of Los Angeles*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1

## **ATTESTATION**

2          I, Melissa Arbus Sherry, am the ECF user whose user ID and password authorized the filing

3   of this document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have

4   concurred in this filing.

5

6   Dated: November 24, 2020                    **LATHAM & WATKINS** LLP

7                                              By:   */s/ Melissa Arbus Sherry*
                                                    _____
8                                                   Melissa Arbus Sherry

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

CASE NO. 5:20-CV-05799-LHK
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

# APPENDIX

### COMPILATION OF KEY RECORD CITES

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| STATEMENTS MADE BEFORE REPLAN | | | |
| April 13, 2020 | President Donald Trump | "I don't know that you even have to ask [Congress]. This is called an act of God. This is called a situation that has to be. They have to give it. I think 120 days isn't nearly enough." | PI Order 7 |
| April 17, 2020 | Census Bureau, "High Level Talking Points" | "We have examined our schedule and compressed it [in the COVID-19 Plan] as much as we can without risking significant impacts on data quality." | PI Order 49 |
| April 19, 2020 | Census Bureau, "Talking Points Re: 2020 Census Extension & Shift in Field Operations" | "The reality is that we can't make the deadline as of right now." | Dkt. 198-5 at DOC_1692 |
| April 27, 2020 | Census Bureau, Director Dillingham, Draft Mem. for Sen. Comm. on Homeland Security and Governmental Affairs & House Comm. on Oversight and Reform | "[The COVID-19 Plan] not only protects our employees and the public, but it also allows us to fulfill our mission to conduct a complete and accurate count of all communities across the nation, including hard-to-count communities." | Dkt. 198-7 at DOC_2232 |
| April 28, 2020 | Census Bureau, "Call with Representative Jamie Raskin" | "We have examined our schedule and compressed it as much as we can without risking significant impacts on data quality. Given the important uses of census data collection processing, it is vital that we not short cut these efforts or quality assurance steps." | Dkt. 198-7 at DOC_2227-28 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| | | "The proposal underwent constitutional review, and we believe it is constitutional and that the adjusted schedule will help us fulfill the constitutional requirement of a complete and accurate census." | |
| May 8, 2020 | Census Bureau, "Operational Timeline" | "Based on the initial suspension of field activities in line with OMB guidance, the Census Bureau can no longer meet its statutory deadlines for delivering apportionment and redistricting data, even conducting operations under unrealistically ideal conditions." | PI Order 9 |
| May 26, 2020 | Census Bureau, Timothy Olson, Associate Director for Field Operations | "[W]e have passed the point where we could even meet the current legislative requirement of December 31 . . . We can't do that anymore." | PI Order 7 |
| July 8, 2020 | Census Bureau, Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs | "We are past the window of being able to get those counts by [the statutory deadlines] at this point." | Dkt. 37-11 at 3 |
| July 21, 2020 | Census Bureau, "Restart Cannot Compress Timeline" | "[E]ven if the White House Task Force guidance permitted the Census Bureau to restart operations in every state and locality tomorrow, the Census Bureau assesses it currently cannot complete 2020 Census field operations in time to deliver apportionment counts by December 31, 2020, and redistricting data by April 1, 2021. … If specific operations are cut or reduced, the effect would be to miss specific parts of the population lead[ing] to an undercount of specific groups." | Dkt. 198-11 at DOC_7167-68 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|------|---------|-----------|-------------|
| July 23, 2020 | Census Bureau, "Elevator Speech" | "Curtailing census operations will result in a census that is of unacceptable quality. . . . Shortening the time period to meet the original statutory deadlines for apportionment and redistricting data will result in a census that has fatal data quality flaws that are unacceptable for a Constitutionally-mandated national activity."<br><br>"[I]t is not possible to shorten the schedule appreciably without directly degrading the quality of the results and introducing great risk."<br><br>"[E]ach and every step in post processing is necessary and eliminating any step would result in a diminished data product. . . [N]o step can be eliminated or overlap with another step." | Dkt. 155-8 at DOC_008070-71 |
| July 23, 2020 | Associate Director Fontenot | "On Monday at DOC I plan to talk about the difference between goal and actual case enumeration ([c]urrently a shortfall . . . and attribute it to the higher drop out rate . . .). I think it is critical to lay the groundwork for the reality of the COVID Impacts and challenges." | Dkt. 198-12 at DOC_0007738-39 |
| July 23, 2020 | Associate Director Olson | "[E]levating the reality is critical, especially in light of the push to complete NRFU asap for all the reasons we know about." | PI Order 10 |
| July 23, 2020 | Associate Director Olson | "We need to sound the alarm to realities on the ground – people are afraid to work for us . . . And this means it is ludicrous to think we can complete 100% of the nation's data collection earlier than 10/31 and any thinking person who would believe we can deliver apportionment by 12/31 has either a mental deficiency or a political motivation." | PI Order 10 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| July 27, 2020 | Associate Director Fontenot | "[W]e were unable [to] reduce the post data collection schedule by an appreciable amount without significantly reducing the accuracy and quality of apportionment counts and . . . redistricting data products and without introducing substantial risk." | Dkt. 199-1 at DOC_8086 |
| July 27, 2020 | Census Bureau, "House Committee on Oversight and Reform – Decennial Hearing Prep Materials" | "The current methodology that has been researched, developed and tested over the decade based on proven processes used in prior Census[es] and upgraded with improved current technology and processes will not enable us to meet the statutory deadlines based on projected current field completion dates." | Dkt. 155-9 at DOC_8158 |
| **STATEMENTS MADE DURING ADOPTION OF REPLAN** | | | |
| July 29, 2020 | Census Bureau, "High Level Summary of the Post-Data Collection Activities" | "Any effort to concatenate or eliminate processing and review steps to reduce the timeframes will significantly reduce the accuracy of the apportionment counts and the redistricting data products." | PI Order 58 |
| July 31, 2020 | Census Bureau, "Operational and Processing Options to Meet September 30" | "Accelerating the schedule by 30 days introduces significant risk to the accuracy of the census data. In order to achieve an acceptable level of accuracy, at least 99% of Housing Units in every state must be resolved." | PI Order 11, 55 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|------|---------|-----------|-------------|
| | | "All of these activities represent abbreviated processes or eliminated activities that will reduce the accuracy of the 2020 Census.  Additionally, the downstream effect of separating apportionment and redistricting processing activities could not be assessed, but we anticipate it will, at a minimum, reduce the efficiency in data processing and could further reduce the accuracy of the redistricting data if there is a similar requirement to deliver that data by the current statutory deadline of April 30, 2021." | |
| July 31, 2020 | Census Bureau, Patrick Cantwell, Chief of Decennial Statistical Studies Division | "Many of these changes delay activities required for developing the remaining data products following apportionment, some of them (but not all) until after 12/31/20, increasing the risk that they will not be completed on time, whatever that schedule becomes."  "Many of these changes, separately or in combination, have not been previously studied or analyzed for their effects on data quality.  We risk decreasing the accuracy of apportionment counts and other statistics released later." | Dkt. 199-3 at DOC_9073-74 |
| August 1, 2020 | Christa Jones, Chief of Staff to Director Dillingham | "I REALLY think we need to say something on page 2 that this is what we've been directed to do or that we are presenting these in response to their direction/request.  This is not our idea and we shouldn't have to own it."  "I think we need to include the language about the quality that we have on the Word document.  We really shouldn't give this as a presentation without making this clear up front." | PI Order 55 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| August 1, 2020 | Census Bureau, "Operational and Processing Options to meet September 30, 2020" | "In order to meet the statutory date of December 31, 2020 for apportionment, field operations must now conclude no later than September 30, 2020.  Accelerating the schedule by 30 days introduces significant risk to the accuracy of census data.  In order to achieve an acceptable level of accuracy, at least 99% of Housing Units in every state must be resolved." | Dkt. 156-4 at DOC_10276 |
| August 3, 2020 | Census Bureau, "Operational and Processing Options to meet September 30, 2020" | "Post-processing must start by October 1, 2020." "All of these activities [in the Replan] represent abbreviated processes or eliminated activities that will reduce accuracy." "A compressed review period creates risk for serious errors not being discovered in the data—thereby significantly decreasing data quality." "Additionally, serious errors discovered in the data may not be fixed—due to lack of time to research and understand the root cause or to re-run and re-review one or multiple state files." | Dkt. 131-7 at 10, 12 |
| **STATEMENTS MADE AFTER REPLAN** | | | |
| August 27, 2020 | Government Accountability Office, "2020 Census: Recent Decision to Compress Census Timeframes Poses Additional Risks to an Accurate Count" | Decision to accelerate deadlines "increases the risks with NRFU system performance" and "with conducting the response processing operation," and "could . . . undermine the overall quality of the count." | Dkt. 131-6 at 14, 16, 1 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| September 5, 2020 | Associate Director Fontenot | Changes to post processing operation "necessitated" by the Replan Schedule "increase the risk the Census Bureau will not identify errors during post processing in time to fix them."<br><br>"[W]e wish to be crystal clear that if the Court were to extend the data collection period past September 30, 2020, the Census Bureau would be unable to meet its statutory deadlines to produce apportionment counts prior to December 31, 2020 and redistricting data prior to April 1, 2021."<br><br>"The post processing deadlines for the Replan Schedule are tight, and extending the data collection deadline would, of necessity, cause the Census Bureau to fail to be able to process the response data in time to meet its statutory obligations.  We have already compressed the post processing schedule from 5 months to only 3 months. . . . We simply cannot shorten post processing beyond the already shortened 3-month period." | Dkt. 81-1 at 32-33 (¶¶ 89-90), 35 (¶ 100) |
| September 8, 2020 | Department of Justice, Alexander Sverdlov, Trial Attorney, September 8, 2020 Hearing | "It is important to emphasize, Your Honor, that extending the timeline of the count past September 30th would make it impossible for the Bureau to comply with Section 141's statutory deadline …." | Dkt. 98 at 9:6-9 |
| September 11, 2020 | Associate Director Fontenot | "We are . . . facing significant risks to complete all states by [September 30], due to factors beyond the Census Bureau's control, such as wildfires in the western part of our country, major storms, resurgence of COVID-19 restrictions and other similar disruptions." | Dkt. 131-8 ¶¶ 82, 107 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| | | "[W]e wish to be crystal clear that if the Court were to extend the data collection period past September 30, 2020, the Census Bureau would be unable to meet its statutory deadlines to produce apportionment counts prior to December 31, 2020 and redistricting data prior to April 1, 2021." | |
| September 18, 2020 | Department of Commerce OIG, "The Acceleration of the Census Schedule Increases Risks to a Complete and Accurate 2020 Census" | "The accelerated schedule increases the risks to obtaining a complete and accurate 2020 Census."<br><br>"If data collection ends before 99 percent completeness is met in every state, the Bureau will not achieve what it views as an acceptable level of accuracy and completeness."<br><br>"According to several senior Bureau officials, the Bureau will miss the December 31, 2020 deadline if data collection goes beyond September 30, 2020."<br><br>"The Bureau determined that to meet the December 31, 2020, deadline, as the Department asked, data processing must begin October 1, 2020." | Dkt. 189 at 10, 22 |
| September 18, 2020 | Census Scientific Advisory Committee, "Recommendations and Comments to the Census Bureau from the Census Scientific Advisory Committee Fall 2020 Meeting, September 18, 2020" | "Counting everyone once and in the right place, using untested and never-before-used technologies, that must work together with precision, requires time.  When the weather isn't right, we postpone the launching of rockets into space.  The same should be true of the decennial enumeration, the results of which will impact apportionment, redistricting, funding decisions, legal mandates and regulatory uses of decennial Census data over the next decade." | PI Order 14 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|------|---------|-----------|-------------|
| September 22, 2020 | Associate Director Fontenot | "In my September 5 declaration . . . I stated that as of that date, and at the completion rate we were then experiencing, we would be able to conclude data collection operations by September 30 and achieve a 99% completion rate for every state.  On September 11, 2020 I revised my assessment and stated that we were facing significant risks to complete all states by September 30, due to factors beyond the Census Bureau's control, such as wildfires in the western part of our country, major storms, resurgence of COVID-19 restrictions and other similar disruptions.  My concerns in this regard continue." | Dkt. 196-1 at 7 (¶ 14), 9-10 (¶¶ 22, 24) |
|  |  | "[W]e wish to be crystal clear that if the Court were to extend the data collection period past September 30, 2020, the Census Bureau's ability to meet its statutory deadlines to produce apportionment counts prior to December 31, 2020 and redistricting data prior to April 1, 2021 would be seriously jeopardized." |  |
|  |  | "We simply cannot shorten post processing beyond the already shortened 3-month period without significant risk." |  |
|  |  | "Were this Court's actions to compress our timeline [past September 30], the Census Bureau would be at risk of not completing post processing without eliminating critical steps that are needed to ensure accuracy. . . . We currently compressed post enumeration processes to the extent we believe feasible.  Any shortening of the allotted time would force us to decide whether to delete operations that are critical and necessary to preparing the apportionment count." |  |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| | | **STATEMENTS MADE ABOUT NEW OCTOBER 5 "TARGET DATE"** | |
| September 25, 2020 | Ron Jarmin, Deputy Director and Chief Operating Officer | "We . . . pose two options.  One closes out field work on 10/5 to begin processing on 10/6 and allows us to meet the 12/31 deadline . . . . The second[] stays in the field longer to allow additional states to reach the 99% completion rate goal and for better completion rates in hard to count areas such as tribal lands.  This option would preclude meeting the 12/31 date, but furthers the goal of a complete and accurate 2020 Census." | Dkt. 233 at 130 |
| September 28, 2020 | Census Bureau, "Proposed Options for Completion of Enumeration" | "If field work is completed anytime after October 5, [the] Census Bureau will be unable to deliver state counts for apportionment by December 31, 2020 due to necessary post processing activities.  Any delay beyond October 5, 2020 would require a corresponding delay to the delivery of state counts for apportionment."<br><br> "The latest date to begin post data collection processing that allows Census Bureau to deliver state counts for apportionment to the Secretary of Commerce by December 31, 2020 is October 6, 2020."<br>"Assuming field work is concluded on October 5, 2020, a decision on 'closeout' processes including enumeration travel is required no later than Friday, October 2, 2020."<br><br> "Option 2: Continue field work beyond October 5, 2020 in order to increase state completion rates to 99% and to continue to improve enumeration of lagging sub-state areas, such as tribal areas, rural areas, and hard-to-count communities.  However, this would not allow for delivery of state counts for apportionment by December 31, 2020." | Dkt. 233 at 147, 148 |

| DATE | SPEAKER | STATEMENT | RECORD CITE |
|---|---|---|---|
| September 28, 2020 | Email from Wilbur Ross, Secretary of Commerce, to Ron Jarmin, Deputy Director and Chief Operating Officer | Ross: "I would like to make sure that I understood correctly that your team's opinion is that if we stay in the field beyond October 5, we would not be able to meet the statutory deadline of December 31." Jarmin: "Yes sir, we need to finish field work on 10/5 if we are to have enough time (and assuming all goes well) to finish the processing of the resident population, federally affiliated overseas and, if requested, unlawful aliens in ICE Detention Centers by 12/31.  Other PM [Presidential Memorandum] related outputs would be pushed to 1/11/2021." | Dkt. 256-1 at 1 |
| October 1, 2020 | Defendants' Response to Plaintiffs' Motion for a Temporary Restraining Order | The Census Bureau "need[s] to conclude field operations by October 5 in order to keep open the possibility of meeting the deadline Congress set for reporting census figures to the President." | Dkt. 284 at 4 |
| October 2, 2020 | Supplemental Brief of Donald J. Trump et al. | "[T]he Deputy Director of the Bureau . . . explains that the Bureau must 'finish field work on 10/5 if we are to have enough time (and assuming all goes well) to finish the processing of the resident population, federally affiliated overseas and, if requested, unlawful aliens in ICE Detention Centers by 12/31." | Suppl. Br. 4, *Trump v. New York*, No. 20-366 (U.S. Oct. 2, 2020) |
| October 2, 2020 | Associate Director Fontenot | "If the California injunction remain in place, it is unlikely that the Census Bureau will be able to meet the December 31 statutory deadline.  If, on the other hand, the California injunction is stayed . . . and the Census Bureau is able to complete field operations by October 5, then the Census Bureau anticipates a complete and accurate census by the statutory deadline." | *La Unión del Pueblo Entero v. Trump*, No. 8:19-cv-2710 (D. Md.) (Dkt. 126-1) (Declaration of Albert E. Fontenot, Jr. ¶ 8) |