# EXHIBIT A

**No. 20-561**

# In the Supreme Court of the United States

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL., APPELLANTS

*v.*

CITY OF SAN JOSE, ET AL.

---

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL., APPELLANTS

*v.*

STATE OF CALIFORNIA, ET AL.

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA*

---

**REPLY BRIEF FOR THE APPELLANTS**

---

JEFFREY B. WALL
  *Acting Solicitor General*
  *Counsel of Record*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

# TABLE OF CONTENTS

Page

I. Appellees' claims rise or fall with the claims at issue in *New York* .................................................................. 2
II. The Court should promptly dispose of this appeal following its decision in *New York* ................................. 5
III. The government's notice of appeal complies with Rule 18 of the Rules of this Court .................................. 6

# TABLE OF AUTHORITIES

Cases:

*Britt* v. *Grocers Supply Co.*, 978 F.2d 1441
  (5th Cir. 1992), cert. denied, 508 U.S. 960,
  and 510 U.S. 821 (1993) ........................................................ 7
*Common Cause* v. *Trump*, No. 20-cv-2023,
  2020 U.S. Dist. LEXIS 226394
  (D.D.C. Nov. 25, 2020) .......................................................... 3
*Ford* v. *Nicks*, 866 F.2d 865 (6th Cir. 1989) ........................... 7
*National Ctr. for Immigrants' Rights, Inc.* v. *INS*,
  892 F.2d 814 (9th Cir. 1989) ................................................. 7
*Reno* v. *Flores*, 507 U.S. 292 (1993) ....................................... 4
*Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312 (1988) .... 6, 7

Constitution and rules:

U.S. Const. Art. III ............................................................ 2, 4
Fed. R. App. P. 3(c) ............................................................ 6, 7
Sup. Ct. R.:
   Rule 18.1 .............................................................................. 6
   Rule 18.10 ............................................................................ 6

Miscellaneous:

85 Fed. Reg. 44,679 (July 23, 2020) ........................................ 3

# In the Supreme Court of the United States

No. 20-561

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL., APPELLANTS

*v.*

CITY OF SAN JOSE, ET AL.

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL., APPELLANTS

*v.*

STATE OF CALIFORNIA, ET AL.

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA*

**REPLY BRIEF FOR THE APPELLANTS**

Appellees agree (San Jose Br. 2; Cal. Br. 6) that this Court should hold this appeal pending decision in *Trump* v. *New York*, No. 20-366 (argued Nov. 30, 2020). And notwithstanding appellees' contrary suggestions, the Court's resolution of *New York* should control the resolution of this appeal. If the Court resolves *New York* in the government's favor—either on jurisdictional or merits grounds—it should promptly vacate the decision below on the same basis.

(1)

2

### I. APPELLEES' CLAIMS RISE OR FALL WITH THE CLAIMS AT ISSUE IN *NEW YORK*

Appellees' claims do not differ from the claims in *New York* in any way that would justify a different outcome in this appeal. J.S. 10-12. Appellees do not suggest that their arguments on the merits—*i.e.*, that the Memorandum violates the procedural and substantive requirements governing the census—differ from the merits arguments presented in *New York*. Nor do they suggest that, if the Court reaches the merits and addresses both the statutory and constitutional arguments in *New York*, their merits claims nevertheless somehow could be resolved differently.

Appellees note (San Jose Br. 15-17; Cal. Br. 7-13) that their evidence of purported apportionment and funding injuries differs from that presented in *New York*, but any differences would have no impact on the outcome of the Article III standing or prudential ripeness analysis. As the government has explained, Reply Br. at 4-6, *New York*, *supra* (No. 20-366) (filed Nov. 23, 2020), to feasibly exclude illegal aliens under the Memorandum, the Secretary must be able to match individual persons identified through census questionnaires and field-data collection with individual persons identifiable through administrative records as illegal aliens as of census day. The Bureau is still processing data and performing other tasks that must be completed before it can run a comparison between the master Census Unedited File and administrative records, and until it runs such a comparison it cannot predict or even estimate the number of illegal aliens that it will be able to identify. *Id.* at 4-5.

The possible results of this matching are speculative in part because it is unknown how many illegal aliens

3

who can be identified in the administrative records responded to the census questionnaire (or were reached during non-response follow-up) *and* provided sufficient identifying information for the Bureau to match the census respondent with administrative records regarding his immigration status. The Bureau accepts census responses that lack a name, provide a name that differs from the census respondent's actual name, or omit other identifying information—any of which would likely render it impossible for the Bureau to match such a response with immigration-related administrative records.

In all events, even if the matching process identifies a substantial number of individual illegal aliens, it also remains uncertain what number of such aliens will fall into sub-categories that the Executive Branch will determine are appropriate to exclude as "consistent with [its] discretion" "under the law." 85 Fed. Reg. 44,679, 44,680 (July 23, 2020); see *Common Cause* v. *Trump*, No. 20-cv-2023, 2020 U.S. Dist. LEXIS 226394, at *17-*18 (D.D.C. Nov. 25, 2020) (compiling the "repeated and unambiguous qualifiers imposing lawfulness and feasibility constraints on implementing the [M]emorandum" in the Memorandum itself). Because those repeated qualifiers are internal limits on the scope of the policy adopted in the Memorandum, the President would not need to "issue[] a new memorandum" to "exclu[de] * * * particular subcategories" of illegal aliens, as the Memorandum does not actually impose a "blanket categorical" exclusion in the first place. Contra Oral Arg. Tr. at 88, *New York*, *supra* (No. 20-366) (Nov. 30, 2020) (characterization of the Memorandum by the *New York* appellees' counsel). Having insisted on bringing a facial pre-enforcement challenge rather than waiting to bring

4

an as-applied post-enforcement challenge, appellees must engage in rank speculation about what legal determinations the Executive Branch will ultimately make once it has identified the sub-categories of illegal aliens that can feasibly be identified—and they have no basis whatsoever for insisting (Cal. Br. 8-11) that *all* such aliens will be determined lawfully excludable (nor can they demonstrate on the merits that, instead, *no* such aliens may be lawfully excluded, see *Reno* v. *Flores*, 507 U.S. 292, 300-301 (1993)).

If the Court agrees with the government in *New York* that any apportionment and funding injuries are too speculative to support Article III standing, or that at a minimum prudential ripeness counsels in favor of waiting for the apportionment to be completed, the same must be true here; appellees have pointed to nothing in the record of these cases that would alter the standing or ripeness analysis. The expert report that appellees rely on to substantiate their purported apportionment injuries (San Jose Br. 15-16; Cal. Br. 8) provides *estimates* of *all* illegal aliens in the United States, yet provides no basis for how the Bureau could *individually enumerate* all those aliens based on the records it possesses. See D. Ct. Doc. 63-2, at 16 (Aug. 27, 2020).

The same is true of appellees' alleged funding injuries. Like the appellees in *New York*, see Reply Br. at 6, *New York*, *supra* (No. 20-366), appellees cannot avoid the fact that the Memorandum does not address funding; indeed the California appellees concede that "[o]n its face, the Memorandum directs exclusion of undocumented immigrants only from the apportionment count and not from other census datasets used to allocate federal funding," Cal. Br. 12. What is more, appellees and their expert have not pointed to a statute that requires

5

the government to rely on the dataset used to tabulate each State's population for apportionment—rather than other census-derived datasets—when distributing federal funds. See San Jose Br. 16; Cal. Br. 11-12; D. Ct. Doc. 86-1, at 4 (Sept. 21, 2020) (referring to "federal financial assistance programs *that rely at least in part on decennial census-derived data*") (emphasis added); see also Reply Br. at 6-7, *New York*, *supra* (No. 20-366); Oral Arg. Tr. at 54, *New York*, *supra* (No. 20-366) (counsel for New York asserting only that "the distribution of funds  * * *  has to be *derived from* the census," not that any statute compels use of the apportionment tabulation without modification) (emphasis added).

### II. THE COURT SHOULD PROMPTLY DISPOSE OF THIS APPEAL FOLLOWING ITS DECISION IN *NEW YORK*

Appellees do not contest that this appeal should be resolved promptly following the Court's decision in *New York*. If the Court reverses or vacates the judgment in *New York*, immediate action in this appeal (and in *Trump* v. *Useche*, No. 20-662 (J.S. filed Nov. 13, 2020)) would be appropriate and necessary to permit the Secretary to comply with the President's Memorandum. If *New York* is resolved in the government's favor, failure to promptly reverse or vacate the judgment below could deprive this Court's judgment in *New York* of effect by allowing the district court's erroneous injunction—that closely tracks the injunction entered by the district court in *New York* and that was entered on substantively the same bases—to continue to bar the Secretary from complying with the Memorandum.

Contrary to appellees' suggestion (San Jose Br. 17; Cal. Br. 6), there is no reason to await or set a schedule for supplemental briefing following this Court's decision in *New York*. If appellees perceive a need to file a

6

supplemental brief, they may do so "at any time while [the] jurisdictional statement is pending." Sup. Ct. R. 18.10. But the Court should not delay for such briefing; only by promptly lifting the injunction entered by the district court below will the Court make it possible for the Secretary to send his report to the President as soon as that report is finalized.

### III. THE GOVERNMENT'S NOTICE OF APPEAL COMPLIES WITH RULE 18 OF THE RULES OF THIS COURT

Finally, appellees are wrong to suggest (Cal. Br. 7 n.2) that the government's notice of appeal was defective. The notice of appeal clearly "specif[ied] the parties taking th[is] appeal," Sup. Ct. R. 18.1, by stating that "*all defendants* in the above-named cases hereby appeal to the Supreme Court of the United States" from the district court's final judgment, J.S. App. 132a (emphasis added). This Court has never suggested that such a notice—which clearly provides that all defendants are parties to the appeal—is insufficient. Indeed, this Court has repeatedly resolved appeals in which the notices of appeal contained generic descriptions of the appealing parties. See, *e.g.*, J.S. App. at 341a, *Gill* v. *Whitford*, 138 S. Ct. 1916 (2018) (No. 16-1161) (noticing an appeal by "[t]he defendants in the above-captioned action," even though that caption included the vague phrase "et al."); J.S. App. at 106a, *Cooper* v. *Harris*, 137 S. Ct. 1455 (2017) (No. 15-1262) (noticing an appeal by "[t]he Defendants in the above-captioned action").

*Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312 (1988), does not support a contrary conclusion. Although that case construed a prior version of Federal Rule of Appellate Procedure 3(c) containing language similar to the current version of Supreme Court Rule 18.1, the notice of appeal there was critically different. In particular, a

7

single plaintiff was "never named or otherwise designated" in the notice of appeal, *Torres*, 487 U.S. at 317, while all of the other remaining plaintiffs were listed by name in the notice of appeal, Pet. at 10, *Torres*, *supra* (No. 86-1845). It thus was not clear whether the unnamed plaintiff was encompassed by a vague "et al." reference in the notice of appeal. *Torres*, 487 U.S. at 317. Here, in contrast, the notice of appeal was unambiguous; it explicitly stated that *all* defendants joined in the appeal.

Indeed, several courts of appeals interpreting the prior version of Federal Rule of Appellate Procedure 3(c) have distinguished *Torres* where the notices of appeal did not list all the appellants by name, but clearly referred to all of them in another way. See, *e.g.*, *National Ctr. for Immigrants' Rights, Inc.* v. *INS*, 892 F.2d 814, 816 (9th Cir. 1989) (per curiam) (explaining that "*Torres* does not require that the individual names of the appealing parties be listed in instances in which a generic term, such as plaintiffs or defendants, adequately identifies them" and finding that a notice of appeal was sufficient where it provided "'that defendants * * * hereby appeal'") (citation omitted); see also *Britt* v. *Grocers Supply Co.*, 978 F.2d 1441, 1444 (5th Cir. 1992) ("Because the notice in this case states that all of a particular defined group are taking an appeal, and the individual identities are readily ascertainable in the record, the specificity requirement is satisfied."), cert. denied, 508 U.S. 960, and 510 U.S. 821 (1993); *Ford* v. *Nicks*, 866 F.2d 865, 869-870 (6th Cir. 1989) (finding that although "[s]tanding by itself, the phrase '*et al.*'" in a notice of appeal may "not give fair notice of what other defendant or defendants may have sought to appeal,"

8

where a notice of appeal also states that it is "on behalf of 'the' defendants" it is sufficient).

\* \* \* \* \*

This Court should hold the jurisdictional statement pending disposition of *Trump* v. *New York*, No. 20-366 (argued Nov. 30, 2020), and then promptly dispose of it as appropriate in light of the Court's decision in that case.

Respectfully submitted.

JEFFREY B. WALL
*Acting Solicitor General*

DECEMBER 2020